## AFFIDAVIT OF STEPHEN J. KELLEHER IN SUPPORT OF SEARCH WARRANT

I, Stephen J. Kelleher, being duly sworn, depose and state as follows:

### INTRODUCTION

1.    I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal
Procedure 41(a)(2)C, that is, a government agent engaged in enforcing the criminal laws and
duly authorized by the Attorney General to request a search warrant. I have been a Special
Agent with the Federal Bureau of Investigation (FBI) since 2004. I am currently assigned
to the Organized Crime Drug Enforcement Task Force Boston Strike Force which consists
of federal law enforcement agents from not only the FBI, but other federal agencies,
including the U.S. Drug Enforcement Administration ("DEA"), the Immigration and
Customs Enforcement ("ICE"), the U.S. Marshals Service ("USMS"), and other state and
local law enforcement agencies. Prior to my current position, I was employed as a police
officer in Seekonk, Massachusetts, and East Providence, Rhode Island.

2.    Since becoming a Special Agent with the FBI, I have participated in investigations of
narcotics trafficking and money laundering, and among other things, have conducted and
participated in physical surveillance, the execution of search warrants, debriefings of
informants, and have been the affiant in Title III investigations. Through my training,
education, and experience, I am familiar with the manner in which illegal drugs are
transported, stored, and distributed, and with the methods of payment for such drugs.

3.    I have written and/or participated in the execution of numerous search warrants resulting in
the seizures of large quantities of controlled substances: packing implements and other
paraphernalia involved in the manufacture and distribution of controlled substances: large

amounts of United States currency, ledger books, bank records, telephone books, receipts, drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled substances. I have participated in the debriefing of defendants, informants and witnesses who had personal knowledge regarding large-scale narcotics trafficking organizations. I have participated in all aspects of drug investigations including conducting surveillance, executing searches pursuant to court-ordered search warrants and executing arrests. As a result of my assignments, I have received extensive specialized training in the field of narcotics identification, investigation and enforcement.

4.   Based upon my training and experience, I am familiar with the methods of operation employed by narcotics traffickers operating at the local, statewide, national and international levels, including those involving the distribution, storage and transportation of narcotics and the collection of monies that constitute the proceeds of narcotics trafficking activities. I am aware that drug traffickers commonly use cellular telephones in furtherance of their drug trafficking activities and frequently change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that narcotics traffickers speak in vague, guarded or coded language when discussing their illegal activities, and employ a variety of counter-surveillance techniques in order to detect if their vehicles are being followed by members of law enforcement.

5.   I have been the case agent in the investigation of the marijuana drug trafficking organization ("DTO") headed by John KOSTA and others as described in detail below. During my work on this investigation, I have reviewed reports prepared by agents and discussed this case and

other related cases with agents and local law enforcement officers who have been involved in these investigations. I submit this affidavit based upon personal knowledge derived from my participation in this investigation, and information that I have received from a variety of other sources, including law enforcement officers and agents, confidential sources, public records, telephone toll records, bank records, pen register and trap and trace information, and intercepted calls. Based on this investigation, which has included court-authorized electronic surveillance, physical surveillance, and arrests and drug seizures, on August 2, 2012, a Boston, Massachusetts federal grand jury returned a three-count indictment, charging 1) John KOSTA, a/k/a Costa MIHALAKAKIS; 2) Fidencia SERRANO-ESQUER, a/k/a "FITO"; 3) Nestor Antonio VERDUZCO, a/k/a "Tony" 4) Dennis NOVICKI; 5) Alexander NAPOLEON; and 6) Donald McCORMICK with conspiracy to possess with intent to distribute, and to distribute, one hundred kilograms or more of marijuana, in violation of 21 U.S.C. §846 (Count One); John KOSTA and Alexander NAPOLEON with possession with intent to distribute marijuana, in violation of 21 U.S.C. §841(a)(1); (Count Two); and John KOSTA and Tamara KOSTA with money laundering conspiracy, in violation of 18 U.S.C. §1956(h) (Count Three).

### PURPOSE OF AFFIDAVIT

6.  The purpose of this Affidavit is to set forth probable cause in support of my application for a search warrant authorizing the search for and seizure of evidence of the crime of conspiracy to possess with intent to distribute, and to distribute, marijuana, possession of marijuana with intent to distribute, and conspiracy to commit money laundering, from

      1.)    45 Riley Switch Road, Phillipston, Massachusetts (hereinafter, "Target

Location 1"): which I believe to be the residence owned by John and Tamara KOSTA and a storage location for evidence sought.

2.)     359 Maple Street, Lynn, Massachusetts. (hereinafter. "Target Location 2"), which I believe to be a residence owned by John KOSTA in which Alexander NAPOLEON resides and a storage location for the evidence sought.

7.     I submit this Affidavit based upon my personal knowledge derived from my participation in this investigation and upon information that I have received from a variety of other sources, including other law enforcement officers and public records.

8.     Representative examples of conspiracy members use of Target Locations 1-2 (collectively, "Target Locations") as part of their drug trafficking activities are set forth below. While I have set forth information that I believe is more than sufficient to show probable cause for the requested search and seizure warrants, I have not included all of the information known to law enforcement about John KOSTA's and the co-conspirators' use of the Target Locations.

## FACTUAL BACKGROUND

9.     This affidavit is based on an FBI investigation that was initiated in 2009. To date, the investigation has revealed that John KOSTA. aka. Costa Mihalakakis,[1] a leader of the targeted conspiracy, purchases large quantities of marijuana in Arizona and transports it back to Massachusetts for distribution. Nestor Antonio VERDUZCO and Fidencio SERRANO-ESQUER, a/k/a. "Fito" (hereinafter, "FITO") are two of KOSTA's known marijuana suppliers. Dennis NOVICKI, Donald McCORMICK and Alexander

[1] Costa Mihalakakis legally changed his name to John Kosta.

4

McCORMICK are drug associates of KOSTA who assist him in transporting and distributing marijuana. Tamara KOSTA, who is John KOSTA's wife, assists KOSTA with laundering the DTO's drug proceeds.

10. The FBI first became aware of KOSTA in 2009, when a Cooperating Witness ("CW"), who was gathering evidence of FITO's drug trafficking activities, told the FBI in a debriefing that KOSTA was FITO's Massachusetts-based distributor.

11. Based on information provided by the CW that FITO was planning a drug-related trip to Massachusetts, the government obtained a court-authorized cell-site order for FITO's phone. Based on the GPS information from FITO's phone, on September 4, 2010, the FBI located FITO and four of his associates in the Burlington Mall parking lot, and they video recorded the meeting. Agents observed (and captured on video) FITO and his associates standing outside three separate vehicles, one of which was an SUV with a bike rack on the rear.[2] During the meeting, one of the associates transferred a number of black duffle bags from one vehicle to the SUV with the bike rack. Agents saw one of the associates open one of the bags and pull out and then replace large bundles of cash. The three vehicle caravan then proceeded to travel back to Arizona. The caravan was followed by undercover officers until it reached the Connecticut state line (the ping on FITO's phone confirms that he returned to Arizona). Analysis of FITO's phone records resulted in the identification of John KOSTA and John KOSTA's phone. (480) 532-2135.

12. In the fall of 2010, Arizona state police and prosecutors were investigating a drug

---

[2] According to the CW, FITO told the CW that he used bike racks as props to detract law enforcement suspicion.

organization and intercepted FITO on their phones. FITO, who was intercepted over 60 times by investigators in Arizona, was referred to by other targets, and identified himself, as "Caballo." On December 12, 2010, Arizona also intercepted a call involving FITO, which indicated that FITO was planning to pick up money from an associate. Acting on this information, Arizona police located FITO's car as it was leaving John and Tamara KOSTA's Arizona residence, located in Paradise Valley, Arizona. Police followed FITO's car and stopped him when he began driving erratically. A search of the car revealed $285,000 in cash, which was seized and forfeited by Arizona. FITO produced a valid Arizona license, which depicted his picture but had his brother's biographical information. FITO was released prior to law enforcement confirming his true identity. Notably, bank records show that Tamara KOSTA accessed two safe deposit boxes on December 10, 2010, two days before the money was seized from FITO after he left the KOSTA's residence.

13.    On three occasions in April and May 2011, the Arizona police conducted trash pulls at the KOSTA's Arizona residence, which John and Tamara KOSTA rented until January 2012. Among items recovered from these trash pulls was marijuana, marijuana packaging materials, including duct tape and vacuum sealed bags; odor masking materials; sawdust; bank statements; a ledger that annotated several hundred pounds of marijuana; and additional financial records and tax return information that indicated that John KOSTA was claiming $3,000 a month in income, and an additional $15,000-18,000 in bonus/gift income.

14.    On August 21, 2011, John KOSTA was stopped for speeding outside of Phoenix, Arizona, while en route from Massachusetts to Paradise Valley, Arizona. John KOSTA was traveling with his 12 year old son when he was stopped. John KOSTA told the trooper that he was

6

tired and just wanted to get home to Paradise Valley after driving for three days. KOSTA said he lived in Massachusetts, but his wife and kids resided in Arizona. KOSTA said he was a "successful" real estate business man who owned high-rise buildings, and at any given time, had millions of dollars invested in real estate. KOSTA told the trooper that his kids attended a private school in Arizona, but he could not recall the name of the school. After issuing KOSTA a citation for speeding, the trooper requested, and received, consent to search KOSTA's car. While searching the vehicle, the trooper observed ten and twenty dollar bills of United States currency scattered inside the cab of the vehicle. The trooper opened a black bag located on the rear seat of the vehicle and immediately noticed rolls of United States currency bound together with rubber bands. KOSTA stated, "I deal in large transactions of money everyday, so what's illegal about carrying lots of money?" When the trooper explained that it was illegal in Arizona to transport cash in excess of $10,000, KOSTA responded, "I sometimes have 60 or 70 thousand dollars with me after some transactions, and I have never been hassled about it in Massachusetts." KOSTA described the cash located in the vehicle as "…only a few thousand dollars…" and "…just travel money…" When KOSTA was asked how much money was in the vehicle he stated, "I don't know, maybe four, maybe five thousand." After determining that the currency was not in excess of $10,000, the trooper released KOSTA with a citation for speeding.

15.    In late November/early December 2011, agents observed John KOSTA and McCORMICK leave Arizona and arrive at Target Location 1. Shortly thereafter, agents noted a marked increase in car traffic in and out of the Target Location 1. On December 4, 2012, Alexander NAPOLEON, one of John KOSTA's customers, was arrested with 46 pounds of marijuana

after he was seen leaving John KOSTA's residence.

16. Between December 2011 and March 2012, the Honorable Douglas P. Woodlock authorized the interception of wire communications over four different phones used by John KOSTA. On January 26, 2012, Judge Woodlock also authorized the interception of wire communications over a phone used by Dennis NOVICKI.

17. Between December 14-22, 2011, John KOSTA was intercepted calling FITO, NOVICKI, and VERDUZCO to negotiate the purchase of marijuana. Specifically, on December 16, 2011, John KOSTA called FITO to discuss obtaining marijuana from FITO that KOSTA would distribute in the United States. On December 17, 2011, John KOSTA was intercepted ordering 1,000 pounds of marijuana from VERDUZCO, which was later delivered by VERDUZCO's couriers to John KOSTA's Arizona residence in multiple shipments. On December 18, 2011, John KOSTA was intercepted talking to NOVICKI about a marijuana shipment that he was arranging to be transported to Massachusetts sometime around December 28, 2011.

18. On December 23, 2012, McCORMICK arrived at John and Tamara KOSTA's Arizona residence driving his white pickup truck. On January 2, 2012, NOVICKI arrived in Arizona. On January 3, 2012, McCORMICK's white pickup truck was moved into John and Tamara KOSTA's garage and the doors were closed presumably so that the pickup truck could be loaded with marijuana.

19. On January 4, 2012, surveillance agents observed KOSTA, McCORMICK, and NOVICKI depart the KOSTAS' residence in Arizona in a caravan of three vehicles. John KOSTA was driving his Chevy Silverado pickup truck; McCORMICK was driving his white pickup truck

with a camper top over the bed, bearing Colorado registration 242 EUJ and equipped with a bike rack and bicycle; and NOVICKI was driving a rental car.

20. On January 6, 2012, at approximately 2:06 p.m., a trooper with the South Dakota Department of Public Safety identified two vehicles (McCORMICK's and NOVICKI's) that appeared to be traveling together, and one of which was exceeding the posted speed limit. The trooper stopped the white pickup truck speeding. A K9 was called to the scene and alerted on the truck. A search of the truck revealed approximately 980 pounds of marijuana, wrapped in white contact paper and stored in the rear of the truck.

21. Cell-site records show that one of John KOSTA's phones was traveling eastbound toward Massachusetts between January 6-8, 2012. Surveillance units observed John KOSTA's Silverado and an unidentified pickup truck arriving at Target Location 1 on January 9, 2012. About an hour and a half later, the pole camera captured NOVICKI's truck arriving at Target Location 1.

22. Around February 15, 2012, the John KOSTA's loaded up a moving truck at their Arizona residence. The KOSTAS then got into their vehicles and traveled back to Target Location 1, where they are currently residing.

## TARGET LOCATION 1

23. Agents have observed defendants John KOSTA, Tamara KOSTA, Dennis NOVICKI, Donald McCORMICK and Alexander NAPOLEON going into and out of the KOSTAS' residence and property located at 45 Riley Switch Road, Phillipston, Massachusetts (45 Riley Switch Road) in a pattern that indicates that KOSTA uses Target Location 1 to conduct drug business.

9

24.    45 Riley Switch Road is a light grey, two story, one family home, with what appears to have

a stone façade.   There is a chimney on the right side of the home.   The home is

distinguishable by the high wooden stockade fence that encloses the perimeter around the

home, which makes the residence and property difficult to see from the street.   There is a

large wooden play set in the rear of the house, a white shed, and a light colored Connex box

in the corner of the yard closest to the street.   The fence around the property has two gates

that allow entry and egress from the property.   An aerial photograph of Target Location 1,

which was taken in August 2012, is attached hereto (Attachment A-1).

25.    On information and belief, I believe John and Tamara KOSTA reside at Target Location 1

and that John KOSTA is storing and distributing drugs from that location.   I further believe

documents and records of KOSTA's drug trafficking and money laundering activities are

stored at Target Location 1.

**Intercepted calls, physical surveillance, and a drug seizure demonstrate that
KOSTA uses Target Location 1 to conduct drug business.**

26.    Footage from a pole camera installed near the KOSTAS' Arizona residence revealed that on

November 23, 2011, McCORMICK's white Chevy pickup truck with no license plates was

moved from KOSTA's driveway into his garage.   On November 24, 2011, KOSTA's

Silverado pickup truck and the white Chevy pickup truck, which then had Colorado license

plates and a bike rack and bicycle, exited the driveway and garage and drove off together.

Footage from a pole camera installed near Target Location 1 revealed that the two trucks

arrived at Target Location 1 on November 27, 2011.   At this time, McCORMICK's white

Chevy pickup truck that left Arizona with Colorado license plates was displaying a

Massachusetts commercial license plate (N23581). Based on my training and experience, I believe that John KOSTA was using the truck equipped with the bike rack to transport marijuana or drug proceeds from Arizona to Massachusetts.

27. In the days following John KOSTA's return to Target Location 1, the pole camera captured an increase in the number of vehicles traveling to and from Target Location 1,which is located on a remote road that normally does not have a heavy volume of traffic. On December 4, 2011, agents monitoring a pole camera positioned outside of Target Location 1 observed a gold-colored Acura MDX arriving at KOSTA's residence. Agents recognized this vehicle as one used by NAPOLEON and Dayna L'Italien.

28. Agents notified surveillance units when the Acura left KOSTA's residence and they followed the Acura as it traveled. Massachusetts State Police ("MSP") Trooper Sullivan stopped the Acura after it cut off another vehicle as it merged onto Rt 93N. NAPOLEON gave inconsistent answers to Trooper Sullivan's questions about where he was going to and coming from. Trooper Sullivan noticed a large amount of currency in NAPOLEON's wallet, which was sitting on the center console. When asked about the money, NAPOLEON said he had just cashed some checks but did not know how much money was in his wallet. When asked if there were any drugs in the car, NAPOLEON answered, "Absolutely not."

29. Based on NAPOLEON's inconsistent answers and nervousness, Trooper Sullivan requested a K9 unit respond to the scene. After the K9 alerted to the exterior or the Acura, a search was conducted in the location where the K9 alerted. Trooper Sullivan recovered approximately 46 pounds of what is believed to be marijuana, which was wrapped in two packages. The packages were wrapped in white contact paper with golden flakes. One

11

package had "22.05" written in black marker and the letter "K" encircled on it in blue marker. Agents believe the "K" was a reference to John KOSTA. The other package had "24.0" written in black marker and "19" encircled in red marker. Trooper Sullivan noted a strong odor of fresh marijuana emitting from the packages and a break in the seam revealed the contents, which were consistent with marijuana. Subsequent laboratory analysis confirmed it was marijuana. Photographs of the packages were sent to the Arizona Department of Public Safety, who confirmed that the contact paper was similar to or the same as the contact paper they retrieved during a trash pull at KOSTA's residence.

30.   NAPOLEON was placed under arrest for possession with intent to distribute marijuana and given Miranda warnings. NAPOLEON refused to make any statements to law enforcement about the marijuana.

**Surveillance observed KOSTA and NOVICKI at Target Location 1 after marijuana was seized.**

31.   As detailed above, on January 4, 2012, surveillance agents observed John KOSTA, McCORMICK, and NOVICKI depart KOSTA's residence in Arizona in a caravan of three vehicles. After the 980 pound marijuana load that McCORMICK was transporting for John KOSTA was seized by South Dakota law enforcement on January 6, 2012. John KOSTA and NOVICKI continued their travel back to Massachusetts to Target Location 1. On January 9, 2012. John KOSTA's truck and an unidentified pickup truck arrived at Target Location 1. NOVICKI arrived an hour and a half later.

32.   As depicted in Attachment A-1, on July 31, 2012, a Connex storage box was present on the property of Target Location 1. A large pickup truck with a covered bed is backed up and

abuts the doors to the Connex box in a manner that would prevent anyone from entering the Connex box. There is also a security camera in the vicinity that would capture anyone attempting to enter the Connex box. Based on my experience and knowledge of this investigation, I believe John KOSTA may use the Connex box to store marijuana.

33. Evidence indicates that John KOSTA has been trafficking marijuana since at least 2009 and continues to do so. On May 5, 2012, the Bureau of Immigrations and Customs Enforcement (ICE) was alerted that John KOSTA had crossed into the United States from Mexico in Nogales, Arizona. An analysis of the crossings at the same time showed that VERDUZCO had crossed the same border two minutes prior to John KOSTA. Based on my knowledge of this investigation, I believe John KOSTA and VERDUZCO went to Mexico to conduct drug business.

34. John KOSTA has used Target Location 1 to distribute marijuana and to meet with co-conspirators. Accordingly, I believe drugs and evidence of drug trafficking and money laundering are present at Target Location 1.

## TARGET LOCATION 2

35. Agents have observed NAPOLEON at 359 Maple Street, Lynn Massachusetts (359 Maple Street). The phone number listed for John Kosta Real Estate is subscribed to in the name of Precision Services, which lists Target Location 2 as its address.

36. 359 Maple Street is a grey, two story, one family home, with a front porch. The number "359" is displayed on the porch area of the home (Attachment A-2). The home is set back from Maple Street and has a long driveway that runs adjacent to 361 Maple Street, which is located to the left of the driveway for 359 Maple Street. There appears to be both a front and

13

rear door to 359 Maple Street. An approximately four foot high wooden fence encloses the rear of 359 Maple Street. The fence abuts a hill that runs down to the parking lot for Fraser Field in Lynn, Massachusetts.

37.    A public records database lists John KOSTA as the owner of Target Location 2. However, public records database lists Alexander NAPOLEON and Dayna L'Italien as the residents of Target Location 2. In addition, surveillance units have seen NAPOLEON and L'Italien coming in and out of Target Location 2 at times that indicate they reside there.

38.    Based on bank and business records, physical surveillance, and a drug seizure, I believe that evidence and records of drug distribution and money laundering are stored at Target Location 2.

**John KOSTA uses Target Location 2 to facilitate money laundering .**

39.    A financial investigation has identified at least eight bank accounts and four safe deposit boxes in the names of or controlled by John and Tamara KOSTA. In 2010, there were $419,770 in cash deposits into the eight accounts opened by John or Tamara KOSTA. In 2011, there were $481,890 in cash deposits into these accounts. The information for 2012 has not been updated, but as of February 2012, there were $21,100 in cash deposits. For those years combined, $448,510 of those cash deposits were into accounts in the name of Tamara KOSTA (deposits made by Tamara KOSTA and at least five others, including NAPOLEON); $53,550 into accounts in the name of John KOSTA; $238,050 into an account in the name of "John Kosta Real Estate"; $182,650 into an account in the name of "MyPhoneBook."

40.    A thorough investigation indicates that John Kosta Real Estate is a shell company designed

to conceal the nature and identity of drug proceeds and to promote John KOSTA's drug trafficking business. The company is registered in Massachusetts, but has had *no* real estate purchases or sales transactional data associated with it: the only listing found was for Target Location 2 (the listing was subsequently withdrawn); cash deposits between 2010-2011 of $238,050 in two different banks; John KOSTA listed himself as self-employed, with a monthly income of $16,000 on a 2010 bank loan application, but according to bank records, no income payments have been made to John KOSTA from this entity.

41.    A public records search for "John Kosta Real Estate" revealed a generic website with a listed phone number of (781) 477-0253, and a postal address of P.O. Box 603, Middleton, Massachusetts. The subscriber for (781) 477-0253 is listed as Precision Services, 359 Maple Street, Lynn, Massachusetts (Target Location 2).

42.    As indicated above, NAPOLEON and his girlfriend, Dayna L'Italien, reside at Target Location 2. Both have been captured on bank security cameras making cash deposits into Tamara KOSTA's bank accounts. Specifically, video images from the Eastern Bank show that in January-February 2011, NAPOLEON made two cash deposits totaling $9,120 into Tamara KOSTA's personal bank account. Between November 2010-August 2011, video still images from Eastern Bank show L'Italien made nine cash deposits totaling $28,000 into the same account using Tamara KOSTA's name. NAPOLEON and L'Italien were living at Target Location 2 at the time the deposits were made.

43.    MyPhoneBook is an unlisted business in Arizona and Massachusetts that cannot be linked to either John KOSTA or Tamara KOSTA based on licensing or advertisement (i.e. utilization of webpage or physical signage). A search of the Massachusetts Secretary of State's corporate

database did not reveal a record for "My Phone Book," and a financial investigation failed to find any corporate filings by this entity. However, John KOSTA opened an account at Eastern Bank (Account #600251698), in the name of MyPhoneBook and listed Target Location 2 on the application. Between January 1, 2010, and December 31, 2011, $182,650, in cash deposits were made into this account, and of that amount, $123,846 was transferred to John KOSTA in the form of payroll checks issued by a payroll company. A review of bank surveillance video shows that John KOSTA, Tamara KOSTA, John KOSTA's father, and another male individual who is as yet unidentified, made these deposits. The deposits were structured under $10,000 and not regular in timing or amounts. John KOSTA receives a salary from the company, "MyPhoneBook," which maintains the Eastern Bank checking account under the name Costa Mihalakakis, doing business as (dba) "My Phone Book."

44.     Additionally, according to a TD Ameritrade application dated October 29, 2008, Tamara KOSTA reported being self-employed with MyPhoneBook with income between $25,000 and $49,999, a net worth of between $15,000 and $49,999, and a liquid net worth of between $50,000 and $99,000. As detailed above, evidence gathered indicates that "MyPhoneBook" is not a legitimate business, but rather is used by the KOSTAS, NAPOLEON, and Dayna L'Italien, to launder the proceeds of John KOSTA's illegal marijuana distribution operation.

45.     Based on the foregoing, there is probable cause to believe that records of drug distribution, drug proceeds, and records of money laundering will be found at Target Location 2.

## PROBABLE CAUSE TO BELIEVE THAT DOCUMENTS, CONTROLLED SUBSTANCES, AND OTHER EVIDENCE ARE STORED AT THE TARGET LOCATIONS

46.     Based on evidence gathered through physical surveillance, trash pulls, and a review of bank

records, and my analysis of dozens of intercepted calls in which John KOSTA negotiated drug deals with suppliers, coordinated the transportation of marijuana with his associates and couriers. I believe that John KOSTA and his co-conspirators maintain ledgers and documents to record the drug trafficking activities, including customers, product sold, product purchased, payments made to suppliers and couriers, and other information. I further believe based on my analysis of John and Tamara KOSTA's bank accounts and financial records, that John and Tamara KOSTA and Alexander NAPOLEON maintain documents to record the proceeds from their drug trafficking activities, and documents that reflect how they laundered or stored the drug proceeds.

47.  Because the members of the conspiracy use Target Location 1 as a base of operation for drug trafficking, as described above, I believe there is probable cause that all of the items in the below paragraph and in Attachment B (attached hereto and incorporated herein) will be found in Target Location 1. I believe documents and records of drug transactions and money laundering (as described below in paragraph 39, sub-paragraphs c and g-l) will be found at Target Locations 1 and 2.

48.  In addition, based upon my training, experience, and the training and experience of other agents with whom I have worked and spoken, I know that:

a.  drug traffickers often possess and store firearms in their residences in order to protect themselves, their supplies of drugs, and/or drug proceeds.

b.  narcotics traffickers must maintain, on hand, large amounts of U.S. Currency in order to maintain and finance their on-going narcotics business;

c.  it is common for narcotics traffickers to maintain books, records, receipts, notes,

17

ledgers, airline tickets, receipts relating to the purchase of financial instruments and or the transfer of funds, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them;

d.  it is common for drug dealers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement authorities;

e.  narcotics traffickers often purchase and/or title their assets in fictitious names, aliases, or the names of relatives, associates or business entities to avoid detection of these assets by government agencies;

f.  even though these assets are in the names of others, the narcotics traffickers actually own and continue to use these assets, and exercise dominion and control over them;

g.  it is common for persons involved in narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences, businesses or other locations which they maintain dominion and

18

control over;

h.  narcotics traffickers often utilize electronic equipment such as computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and or store the information described above. I have also encountered beepers, cell phones, smart phones, billing records pertaining to beeper accounts, telephones, and ledgers containing beeper code numbers, customers and stash locations, all of which facilitate drug distribution;

i.  when drug traffickers amass significant proceeds from the sale of drugs, they attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize, among other mechanisms, domestic and international banks and their attendant accounts, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency. Traffickers often commingle narcotics proceeds with money generated by legitimate businesses;

j.  narcotics traffickers at times become fearful that their extravagant spending habits will bring them under scrutiny by the Internal Revenue Service or other federal, state, or local agencies. In order to legitimize their spending, these traffickers file tax returns reporting income commensurate with the amount of money they have spent during the year which they feel can be traced and documented by the government. The "source" of their income reported on these returns is usually falsely stated, misleading or generic in terms. Retained copies of these returns are commonly kept by the traffickers in their residences and businesses;

k.    traffickers commonly maintain books or papers which reflect names. addresses and/or telephone numbers of their associates in the trafficking organization:

l.    traffickers take or cause to be taken photographs of themselves. their associates, and their property. and that these traffickers usually maintain these photographs in their possession;

49.    Based on this training and experience, my analysis of intercepted calls. drugs seized during the arrests of co-conspirators who have been involved in drug trafficking with John KOSTA and the co-conspirators, I believe that drug proceeds, documents and other evidence of drug trafficking and money laundering will be found at both Target Locations 1 and 2.

## REQUEST FOR NIGHT TIME EXECUTION OF SEARCH WARRANT

50.    I believe a nighttime execution of the search warrant is necessary for the search of 45 Riley Switch Road, Phillipston, Massachusetts (Location 1). This warrant is believed necessary because John KOSTA has secured his residence with an approximately eight foot high stockade fence with locking gates, and the residence has a security system that includes at least one video camera that is visible from the aerial photographs taken by law enforcement (Attachment A-1). This type of security video system is the type that could allow John KOSTA to view Target Location 1 from inside his home as well as remotely. Moreover, the street leading to Target Location 1 is remote and does not have a high volume of traffic. Agents cannot post outside of the residence and wait for either John or Tamara KOSTA to leave without running the risk of being identified on the security cameras. In addition, according to the Phillipston Police Chief, Kevin Dodge. the Phillipston Police responded to the KOSTAS' residence on one occasion for a call of gunshots. The Phillipston Police spoke

with John KOSTA at that time, and John KOSTA told them that his wife was practicing target shooting. I have reviewed John KOSTA's criminal history report and note that he was charged in October 2005 with possession of a firearm without a permit in Winchendon District Court, which is the court affiliated with Phillipston, Massachusetts. That case was ultimately dismissed for reasons of which I do not have knowledge.

51.    Additionally, the fence surrounding Target Location 1 affords John KOSTA a tactical advantage over any arrest and search team. This is compounded by the fact that Target Location 1, fitted with video surveillance, provides a high ground against any advancing law enforcement agents. Accordingly, agents intend to arrest John KOSTA prior to 6:00 a.m. An after hours arrest will allow the arrest team to effect the safe arrest of John and Tamara KOSTA under the cover of darkness, which will reduce the tactical advantages that KOSTA has constructed at Target Location 1. An nighttime search warrant will allow the team to execute the search immediately after the arrests are made.

## CONCLUSION

Based on all of the foregoing, there is probable cause to believe that on the premises identified as Target Locations 1 and 2 and more fully described in "Attachment A" for each Target Location that the items set forth in "Attachment B" will be found in Target Location 1, and that the items set forth in "Attachment C" will be found in Target Locations 1 and 2.

Stephen J. Kelleher  
Special Agent  
Federal Bureau of Investigation

Signed and sworn to before me this 6 day of August, 2012

Honorable Marianne B. Bowler  
United States Magistrate Judge

21

## EXHIBIT A

### Affidavit of Stephen J. Kelleher

I, Stephen J. Kelleher, being duly sworn, hereby depose and state as follows:

1. I have been employed as a Special Agent with the Federal Bureau of Investigation since 2004. Since becoming a Special Agent, I have participated in investigations of narcotics trafficking and money laundering, and among other things, have been the affiant in Title III investigations and have conducted and participated in physical surveillance, the execution of search warrants, and debriefings of informants. Before joining the FBI, I was employed as a police officer in Seekonk, Massachusetts, and East Providence, Rhode Island. Through my training, education, and experience, I am familiar with the methods of operation of narcotics traffickers, including the distribution, storage, and transportation of narcotics and drug proceeds.

2. I am currently assigned to the Organized Crime Drug Enforcement Task Force Boston Strike Force ("the Strike Force"). The Strike Force is comprised of agents from state and local law enforcement agencies and of federal law enforcement agents from the FBI, the U.S. Drug Enforcement Administration, U.S. Immigration and Customs Enforcement, and the U.S. Marshals Service.

### Purpose of the Affidavit

3. I submit this affidavit in support of applications for warrants to seize all funds in the following Target Accounts:

   a. Eastern Bank checking account number 00600251698, held in the name of Costa Mihalakakis, doing business as My Phone Book;

1

    b.  Eastern Bank checking account number 00401107396, held in the name of

        Tamara Kosta;

    c.  TD Bank checking account number 8244540064, held in the name of John Kosta

        Real Estate Co.;

    d.  Sovereign Bank checking account number 38504831678, held in the name of

        John Kosta, doing business as John Kosta Real Estate;

    e.  Bank of America checking account number 004606140959, held in the name of

        Tamara L. Mihalakakis;

    f.  BBVA Compass Bank checking account number 2512763432, held in the name

        of Tamara Kosta;

    g.  People's United Bank checking account number 0021114305, held in the name of

        Costa Mihalakakis; and

    h.  Wells Fargo Bank checking account number 2704137880, held in the name of

        Tamara Kosta; and

    i.  TD Ameritrade investment account number 754845240, held in the name of

        Tamara Kosta.

(collectively, "the Target Accounts")

4. I also submit this affidavit in support of applications for warrants to seize the following

Target Vehicles:

    a.  a white 2010 Nissan Maxima, VIN 1N4AASAP7AC803341, registered in the

        name of John Kosta, 45 Riley Switch Rd., Phillipston, Massachusetts, and bearing

        Massachusetts registration number 668-TH4;

2

    b. a red 2008 Pontiac Grand Prix, VIN 2G2WC58C981133275, registered in the name of John Kosta, P.O Box 26944, Scottsdale, Arizona, and bearing Arizona registration number ARL3893;

    c. a grey 2008 Chevrolet Silverado, VIN 1GCHK23K08F184998, registered in the name of John Kosta, 45 Riley Switch Rd., Phillipston, Massachusetts, and bearing Massachusetts registration number 471-BS9;

    d. a 2010 Seadoo RxTx260, VIN YDV17674E010, registered in the name of John Kosta; and

    e. a 2010 Seadoo Gtxis 215, VIN YDV01588C010, registered in the name of John Kosta.

(collectively, "the Target Vehicles")

5. I also submit this affidavit in support of an application for a warrant to search and potentially to seize the contents of the following Target Safe Deposit Box:

    a. Safe Deposit Box #3, held in the name of John Kosta at TD Bank, 232 South Main St, Middleton, MA 01949 ("the Target Safe Deposit Box").

6. This affidavit is based on statements made to me by witnesses; information obtained from other law enforcement personnel involved in the investigation; review of documents, including bank and other financial records; public records checks; and my own knowledge, training and experience. This affidavit is submitted for the limited purpose of establishing probable cause in support of the applications for seizure warrants, and therefore does not necessarily contain every detail I and other law enforcement officers have learned during the course of this investigation.

3

7. The attached, August 6, 2012, Affidavit of Special Agent Stephen J. Kelleher in Support of Application for Search Warrant ("the SW Affidavit") is incorporated herein by reference. As described in detail in the SW Affidavit, there is probable cause to believe that John Kosta (a/k/a Costa Mihalakakis) engaged in a conspiracy to possess with intent to distribute, and to distribute, marijuana in violation of 21 U.S.C. § 846 and possessed marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). As the SW Affidavit also described, there is also probable cause to believe that John Kosta and Tamara Kosta (a/k/a Tamara Mihalakakis) conspired to commit money laundering in violation of 18 U.S.C. § 1956(h).

8. As set forth below, I have probable cause to believe that the funds in the Target Accounts; the contents of the Target Safe Deposit Box; and several of the Target Vehicles (the red 2008 Pontiac Grand Prix, the 2008 Chevrolet Silverado, the 2010 Seadoo RxTx260, and the 2010 Seadoo Gtxis) are subject to forfeiture to the United States under 21 U.S.C. § 853 as property that constitutes proceeds or is derived from proceeds of violations of 21 U.S.C. §§ 846 and 841.

9. As further set for below, I also have probable cause to believe that the funds in the Target Accounts and the contents of the Target Safe Deposit Box are subject to forfeiture to the United States under 21 U.S.C. § 881 as money furnished or intended to be furnished in exchange for controlled substances and money used or intended to be used to facilitate a violation of 18 U.S.C. §§ 841 and 846.

10. As further set forth below, I also have probable cause to believe that the funds in the Target Accounts; the contents of the Target Safe Deposit Box; and several of the Target Vehicles (the red 2008 Pontiac Grand Prix, the 2008 Chevrolet Silverado, the 2010 Seadoo RxTx260, and the 2010 Seadoo Gtxis) are subject to forfeiture to the United States under 18 U.S.C.

4

§§ 981(a)(1)(A) and 982(a)(1) as property involved in (or traceable to property involved in) a violation of 18 U.S.C. § 1956(h).

11. Finally, as set forth below, I have probable cause to believe that one of the Target Vehicles (the white 2010 Nissan Maxima) is subject to forfeiture to the United States under 21 U.S.C. §§ 853 and 881 as property used to commit or facilitate the commission of violations of 21 U.S.C. §§ 846 and 841.

### Statutory Background

12. Pursuant to 21 U.S.C. § 846, it is illegal to conspire to commit the offenses defined in 21 U.S.C. § 841(a)(1).  Section 841, for its part, makes it illegal to knowingly or intentionally manufacture, distribute, or dispense—or possess with the intent to manufacture, distribute, or dispense—a controlled substance.  Under 21 U.S.C. § 853 (a)(1), any property constituting or derived from the proceeds of a violation of 21 U.S.C. § 846 or § 841 is subject to seizure by and criminal forfeiture to the United States, as is any property belonging to the violator that was used or intended to be used to commit or facilitate the commission of the § 846 or § 841 violation.  Furthermore, under 21 U.S.C. § 853(d), there is a rebuttable presumption that any property acquired by a person during the period in which he was violating § 846 or § 841 (or shortly thereafter) is subject to criminal forfeiture if there was no other likely source for that property.

13. Under 21 U.S.C. § 881(a)(4) and (6), the United States may also seize and civilly forfeit:

a)  all vehicles that are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of certain controlled substances;

5

b) all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for certain controlled substances, together with all proceeds traceable to such an exchange; and

c) all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of certain drug statutes, including 18 U.S.C. §§ 841 and 846.

14. Pursuant to 18 U.S.C. § 1956(h), it is illegal to conspire to launder money in any of the ways specified in 18 U.S.C. §§ 1956 and 1957. Under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(h), or any property traceable to such property, is subject to seizure by and forfeiture to the United States.

### The Drug Trafficking and Money Laundering Schemes

15. On August 2, 2012, a federal grand jury sitting in the District of Massachusetts returned an indictment charging John Kosta and others with conspiracy to possess with intent to distribute, and to distribute, marijuana in violation of 21 U.S.C. § 846. The indictment also charged John Kosta and one of the other conspirators with possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Finally, the indictment charged John and Tamara Kosta with conspiracy to launder money in violation of 18 U.S.C. § 1956(h).

16. As the SW Affidavit sets forth in greater detail, John Kosta has, since at least November 2009, been involved in a conspiracy to import large quantities of marijuana to Massachusetts from Mexico, via Arizona. Until February 2012, John Kosta and his wife, Tamara, maintained residences in Arizona and Massachusetts, which John Kosta used as depots for marijuana shipments. The Kosta drug trafficking organization received large shipments of

marijuana at the Kostas' Arizona residence.   Someone then drove the marijuana from Arizona to one of the of the Kostas' homes in Massachusetts or nearby.  (One such shipment, driven by a co-conspirator and intercepted in January of this year, was comprised of 980 pounds of marijuana.)  From there, the marijuana was moved once again, presumably for distribution in the northeast, although I do not know the marijuana's ultimate destination. (When state law enforcement stopped one co-conspirator after leaving one of the Kostas' Massachusetts homes with approximately 50 pounds of marijuana in his car, the co-conspirator refused to make any statements about the marijuana.)  Based on the investigation, between December 2010 and February 2012, when the Kostas abandoned their rented residence in Arizona and moved back to Phillipston, Massachusetts, the Strike Force estimates that they trafficked in an excess of three million dollars' worth of marijuana.

17. The Kosta drug trafficking organization paid for its marijuana shipments in cash, which John and Tamara Kosta kept in various bank accounts and, I believe, safe deposit boxes in banks in Massachusetts and Arizona.  The Kostas deposited and withdrew large amounts of cash from their accounts frequently, sometimes depositing tens of thousands of dollars in cash into various accounts in one day.  Between June 1, 2009, and December 31, 2011, the Kostas made cash deposits totaling $940,960 into these accounts; over $400,000 went into accounts in Tamara Kosta's name, over $50,000 into John Kosta's accounts, and the remainder into accounts associated with sham businesses that function to help the Kostas launder their drug proceeds.  Based on my training and experience, I know that drug trafficking organizations are cash businesses and often deal with large amounts of cash.  Since the arrest of a co-conspirator in February 2012, the cash deposits into several of the Kostas' bank accounts have decreased markedly.

18. For the duration of the Strike Force's investigation, neither John nor Tamara Kosta held legitimate employment. No Strike Force member ever saw either Kosta going to or from a place of employment. Neither did the investigation reveal any other legitimate source of income, other than one lottery award for $7,000 from the Commonwealth of Massachusetts deposited into an account held in the name of Tamara L. Mihalakakis, which is an alias of Tamara Kosta's.

### Forfeitability of the Assets: The Target Accounts

19. The Kostas control nine bank accounts that there is probable cause to believe contain funds that are forfeitable.

*Eastern Bank Checking Account #600251698*

20. Using the alias Costa Mihalakakis, John Kosta opened Eastern Bank Checking Account #600251698 in June 2003. The account is held in the name of Costa Mihalakakis, doing business as an entity called My Phone Book.

21. In the paperwork he submitted when he opened the account, John Kosta listed My Phone Book's address as 359 Maple Street, Lynn, Massachusetts, 01904. John Kosta owns that property, which is a residential property bearing no commercial markings. One of his indicted co-conspirators, Alexander Napoleon, now resides there.

22. My Phone Book is not registered as a business in either Massachusetts or Arizona, and the Strike Force did not locate any licensing or advertising information linking John or Tamara Kosta to a business with that name.

23. Between January 1, 2010, and December 31, 2011, $182,650 in cash was deposited into Eastern Bank Checking Account #600251698. Bank surveillance videos reveal that John

8

Kosta, Tamara Kosta, John Kosta's father, and an unidentified male made deposits into the account during this period.

24. Some of the cash that was deposited into Eastern Bank Checking Account #600251698 was used to pay Prime Pay LLC for services intended to lend My Phone Book an air of legitimacy.  Prime Pay LLC provides full-service payroll management, which includes among other things, issuing payroll checks and generating payroll reports like timesheets. During the period reviewed by the Strike Force, Prime Pay LLC managed the payroll for My Phone Book, but it only ever issued My Phone Book payroll checks to one person.  After receiving payments from My Phone Book, Prime Pay LLC issued payroll checks to John Kosta and deposited those checks directly into his People's United checking account (described below) to make it appear as if he had a legitimate source of income.  Of the $182,650 in cash deposits made into Eastern Bank Checking Account #600251698 between January 2010 and December 2011, $123,846 was transferred to John Kosta via Price Pay LLC in the form of payroll checks.  An additional $56,893 went toward payroll taxes to add to the appearance of legitimacy.

25. Prime Pay LLC did not issue payroll checks to Tamara Kosta.  Nevertheless, in an application to create a TD Ameritrade investment account, Tamara Kosta reported being self-employed, with her company being My Phone Book.  In the same application, she reported income of between $25,000 and $49,999; a net worth of between $15,000 and $49,999; and a liquid net worth of between $50,000 and $99,000.

26. Based on the foregoing, I have probable cause to believe that the funds in Eastern Bank Checking Account #600251698 constitute or are derived from proceeds of the Kostas' violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute

marijuana) and of John Kosta's violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana).  The property is therefore subject to seizure and forfeiture under 21 U.S.C. §§ 853 and 881.  In addition, I have probable cause to believe that the funds in the account constitute property involved in (or traceable to property involved in) the Kostas' conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and are therefore subject to seizure and forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

*Eastern Bank Checking Account #401107396*

27. Tamara Kosta opened Eastern Bank Checking Account #401107396.  Between January 1, 2010, and January 17, 2012, $132,620 in cash have been deposited into this account.

28. Bank surveillance videos reveal that Tamara Kosta, John Kosta, John Kosta's father, Dayna L'Italien, and John Kosta's indicted co-conspirator Alexander Napoleon each made cash deposits into this account during that period.  When Dayna L'Italien made deposits, she filled out the deposit slips indicating that she was Tamara Kosta.  When Alexander Napoleon made the deposits, he also filled out the deposit slip with Tamara Kosta's name.

29. The cash that was deposited into this account was used to make mortgage and credit card payments and to pay for utilities, auto car loans, and insurance.  Money from this account was also used to pay the U.S. Treasury and the Commonwealth of Massachusetts approximately $33,190, purportedly as income tax payments.

30. Based on the foregoing, I have probable cause to believe that the funds in Eastern Bank Checking Account #401107396 constitute or are derived from proceeds of the Kostas' violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute marijuana) and of John Kosta's violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana).  The property is therefore subject to seizure and forfeiture under 21

U.S.C. §§ 853 and 881. In addition, I have probable cause to believe that the funds in the account constitute property involved in (or traceable to property involved in) the Kostas' conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and are therefore subject to seizure and forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

*TD Bank Checking Account #8244540064*

31. John Kosta opened TD Bank Checking Account #8244540064 account on December 13, 2006 in the name of an entity called John Kosta Real Estate.

32. Between June 2009 and December 31, 2011, the account was funded almost exclusively with cash deposits totaling $207,150. Those deposits were made by John Kosta, Tamara Kosta, John Kosta's father, and a man named Charles Spears (although there may have been others as well). An analysis of the account activity in this account shows that the activity is not consistent with a real estate business. First, real estate businesses do not ordinarily deal in large quantities of cash. Second, the cash deposited into the account was used to make finance payments of approximately $9,615 for two Seadoo jet skis (discussed below). (In addition to the jet ski payments, money from this account was also used to pay credit card debts of approximately $30,900; to make tax payments to the Internal Revenue Service and the Commonwealth of Massachusetts totaling approximately $199,180; to purchase a residence located at 100 Summit St, Orange, Massachusetts for $45,000; and to make finance payments of approximately $11,440 on John Kosta's 2011 Chevrolet Silverado.)

33. In the paperwork he submitted when he opened TD Bank Checking Account #8244540064, John Kosta listed John Kosta Real Estate's address as 359 Maple Street, Lynn, Massachusetts, 01904. John Kosta owns that property, which is a residential property

11

bearing no commercial markings. One of his indicted co-conspirators, Alexander Napoleon, now resides there.

34. John Kosta, who maintains a real estate broker's license in Massachusetts, has named John Kosta Real Estate as his employer on various occasions. One of those came in August 20, 2011, when he was stopped by the Arizona Department of Public Safety for speeding while driving from Massachusetts to his Arizona residence. Kosta told the officer who stopped him that Kosta was a successful real estate businessman who owned high-rise buildings and, at any given time, was doing millions of dollars in real estate business. When the officer searched Kosta's car, he found thousands of dollars of U.S. currency in rolls held together by rubber bands. This manner of packaging money is consistent with the storage of illegal narcotics proceeds, not with the storage of income received from a legitimate real estate business that owns high-rise buildings.

35. There is a business called John Kosta Real Estate registered in Massachusetts, but it does not operate as a legitimate real estate business. Although there has been significant activity over the past year and a half in three bank accounts associated with the business (TD Bank Checking Account #8244540064 and two others, described below), the Strike Force did not find evidence that the company was associated with the listing or sale of any property in 2011 or early 2012. The company's only current listing is for 359 Maple St., Lynn, Massachusetts—the property owned by John Kosta at which one of his indicted co-conspirators now resides.

36. Based on the foregoing, I have probable cause to believe that the funds in TD Bank Checking Account #8244540064 constitute or are derived from proceeds of the Kostas' violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute marijuana) and

of John Kosta's violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana). The property is therefore subject to seizure and forfeiture under 21 U.S.C. §§ 853 and 881. In addition, I have probable cause to believe that the funds in the account constitute property involved in (or traceable to property involved in) the Kostas' conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and are therefore subject to seizure and forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

*Sovereign Bank Checking Account #38504831678*

37. John Kosta opened Sovereign Bank Checking Account #38504831678 on April 6, 2011. The account is held in his name, doing business as John Kosta Real Estate. This account was funded exclusively with cash deposits totaling $61,100 through December 31, 2011. The primary debits from this account were monthly payments of $2,921.71, eventually totaling $26,295, to Leo Garcia. Garcia and co-owner George Secchiaroli sold John Kosta an empty commercial building at 325 Water Street, Fitchburg, Massachusetts for $250,000 on April 5, 2011, and both financed a loan of $200,000 to Kosta for the property. As of late July 2012, the building remained vacant, with few visible improvements. One of the few improvements was the addition of a new door for the building's loading dock.

38. As with the TD Bank Checking Account just discussed, John Kosta listed John Kosta Real Estate's address as 359 Maple Street, Lynn, Massachusetts, 01904 in the paperwork he submitted when he opened Sovereign Bank Checking Account #38504831678. John Kosta owns that property, which is a residential property bearing no commercial markings. One of his indicted co-conspirators, Alexander Napoleon, now resides there.

39. Based on the foregoing, I have probable cause to believe that the funds in Sovereign Bank Checking Account #38504831678 constitute or are derived from proceeds of the Kostas'

violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute

marijuana) and of John Kosta's violation of 21 U.S.C. § 841(a)(1) (possession with intent to

distribute marijuana). The property is therefore subject to seizure and forfeiture under 21

U.S.C. §§ 853 and 881. In addition, I have probable cause to believe that the funds in the

account constitute property involved in (or traceable to property involved in) the Kostas'

conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and are therefore subject to

seizure and forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

*Bank of America Checking Account #004606140959*

40. Tamara Kosta opened Bank of America Checking Account #004606140959, and between

January 1, 2010, and January 12, 2012, Tamara Kosta and an unidentified male made cash

deposits totaling $22,520 into this account. The only other deposit into the account was a

$7,000 check from the Commonwealth of Massachusetts for lottery winnings. The account

is held in the name of Tamara L. Mihalakakis, which is an alias of Tamara Kosta's.

41. A review of the activity in this account showed that on August 8, 2011, Tamara Kosta

obtained a bank check for $15,258.54 that was made out to the town of Perry, Maine, where

the Kostas purchased property. Other payments made from the account include

approximately $6,159 in mortgage payments to Bank of America in connection with the

Kostas' residence in Phillipston, Massachusetts and $9,497 in credit card payments.

42. Based on the foregoing, I have probable cause to believe that the funds in Bank of America

Checking Account #004606140959 constitute or are derived from proceeds of the Kostas'

violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute

marijuana) and of John Kosta's violation of 21 U.S.C. § 841(a)(1) (possession with intent to

distribute marijuana). The property is therefore subject to seizure and forfeiture under 21

U.S.C. §§ 853 and 881. In addition, I have probable cause to believe that the funds in the account constitute property involved in (or traceable to property involved in) the Kostas' conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and are therefore subject to seizure and forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

*BBVA Compass Bank Account #2512763432*

43. Tamara Kosta opened BBVA Compass Bank Account #2512763432 on September 13, 2008. At the end of 2009, the account had a balance of over $25,000. Between January 1, 2010, and December 31, 2011, there were $54,350 in cash deposits into this account.

44. The account was used primarily to pay for the Kosta children's tuition at Scottsdale Christian Academy, a private school in Arizona, during the 2010–2011 school year; those payments totaled $52,429. Tamara Kosta also used this account to make rental payments of $8,075 for the Kostas' Paradise Valley, Arizona residence, one payment in February, 2010 and another in January 2012.

45. Based on the foregoing, I have probable cause to believe that the funds in BBVA Compass Bank Account #2512763432 constitute or are derived from proceeds of the Kostas' violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute marijuana) and of John Kosta's violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana). The property is therefore subject to seizure and forfeiture under 21 U.S.C. §§ 853 and 881. In addition, I have probable cause to believe that the funds in the account constitute property involved in (or traceable to property involved in) the Kostas' conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and are therefore subject to seizure and forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

*People's United Bank Checking Account #21114305*

46. John Kosta opened People's United Bank Checking Account #21114305 at Danver's Bank, which was later purchased by People's United Bank. The account is held in the name of his alias, Costa Mihalakakis.

47. Between January 1, 2010, and December 31, 2011, there were $53,550 in cash deposits into this account. In addition to these cash deposits, this account received a total of $123,846 in payroll checks issued by Prime Pay LLC, ostensibly on behalf of My Phone Book. As described above, the money that financed these payroll checks came from cash deposits made into John Kosta's Eastern Bank Checking Account #600251698.

48. Funds from People's United Bank Account #21114305 were used to make $59,513 in mortgage payments associated with the Kostas' residence in Phillipston, MA and $63,411 in payments to the Kostas' personal credit cards.

49. Based on the foregoing, I have probable cause to believe that the funds in People's United Bank Checking Account #21114305 constitute or are derived from proceeds of the Kostas' violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute marijuana) and of John Kosta's violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana). The property is therefore subject to seizure and forfeiture under 21 U.S.C. §§ 853 and 881. In addition, I have probable cause to believe that the funds in the account constitute property involved in (or traceable to property involved in) the Kostas' conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and are therefore subject to seizure and forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

*Wells Fargo Bank Checking Account #2704137880*

50. Wells Fargo Bank Checking Account #2704137880 is held in the name of Tamara Kosta.

51. Between January 1, 2010, and January 23, 2012, there were $227,020 in cash deposits made into this account.

52. The Kostas used funds from this account to make $11,250 in rental payments for their Paradise Valley, Arizona residence and to make $16,930 in finance payments for John Kosta's 2010 Chevrolet Suburban. In addition, the Kostas used money from this account to pay $37,443 in credit card debts that they incurred renting vehicles and booking flights that they used in their marijuana distribution operation. Finally, the Kostas made $84,950 in payments from this account to Jonathan Wheaton, who sold the Kostas property in Perry Maine in March 2008.

53. Based on the foregoing, I have probable cause to believe that the funds in Wells Fargo Bank Checking Account #2704137880 constitute or are derived from proceeds of the Kostas' violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute marijuana) and of John Kosta's violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana). The property is therefore subject to seizure and forfeiture under 21 U.S.C. §§ 853 and 881. In addition, I have probable cause to believe that the funds in the account constitute property involved in (or traceable to property involved in) the Kostas' conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and are therefore subject to seizure and forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

*TD Ameritrade Investment Account #754845240*

54. Tamara Kosta opened TD Ameritrade Investment Account #754845240 on October 29, 2008, and the account is held in her name. Between the account opening and December 31, 2011, she funded the account exclusively with transfers from one of the Target Accounts (her Wells Fargo Bank Checking Account #2704137880), with two of the transfers coming in 2010. As

17

noted above, that account was itself funded with cash deposits of approximately $227,020. The account balance in the TD Ameritrade investment account on December 31, 2011 was $6,819.58.

55. Based on the foregoing, I have probable cause to believe that the funds in TD Ameritrade Investment Account# 754845240 constitute or are derived from proceeds of the Kostas' violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute marijuana) and of John Kosta's violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana). The property is therefore subject to seizure and forfeiture under 21 U.S.C. §§ 853 and 881. In addition, I have probable cause to believe that the funds in the account constitute property involved in (or traceable to property involved in) the Kostas' conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and are therefore subject to seizure and forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

### Forfeitability of the Assets: The Target Vehicles

56. The Kostas own five vehicles that there is probable cause to believe are forfeitable.

*2010 Nissan Maxima*

57. A white 2010 Nissan Maxima, VIN 1N4AA5AP7AC803341, was purchased by or conveyed to Tamara Kosta in September 2010. The vehicle is now registered to John Kosta, 45 Riley Switch Rd., Phillipston, Massachusetts, and bears Massachusetts registration number 668-TH4.

58. On December 20, 2011, John Kosta used this Nissan Maxima to travel to meet with an unidentified courier who had transported marijuana from California to Arizona. During this meeting, John Kosta retrieved four pounds of hydroponic marijuana, which he used the

18

Maxima to transport. Two days later, John Kosta used the Maxima to shuttle his co-conspirator Donald McCormick around Paradise Valley, Arizona.

59. Based on the foregoing, I have probable cause to believe the United States may seize the 2010 Nissan Maxima. John Kosta used the vehicle to commit or facilitate the commission of a violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute marijuana). The property is therefore subject to seizure and forfeiture under 21 U.S.C. §§ 853 and 881.

*2008 Pontiac Grand Prix*

60. John Kosta purchased a red 2008 Pontiac Grand Prix, VIN 2G2WC58C981133275, sometime in or after 2008. In September 2011, John Kosta registered the Grand Prix in the State of Arizona. The vehicle is now registered to John Kosta, P.O Box 26944, Scottsdale, Arizona, and bears Arizona registration number ARL3893.

61. Beginning in April 2010 and continuing through May 2011, someone (presumably John or Tamara Kosta) made monthly finance payments for the 2008 Pontiac Grand Prix to Drive Financial/Santander Consumer USA using the funds in one of the Target Accounts that was held in Tamara Kosta's name (Eastern Bank Checking Account #401107396).

62. Based on the foregoing, I have probable cause to believe the United States may forfeit the 2008 Pontiac Grand Prix. Because the vehicle was financed with funds from one of the Target Accounts, the vehicle is derived from the proceeds of John Kosta's violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute marijuana) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana), and is therefore subject to seizure and forfeiture under 21 U.S.C. § 853. Likewise, because it was financed with funds from one of the Target Accounts, the vehicle constitutes property involved in

19

money laundering transactions in violation of 18 U.S.C. § 1956, or property traceable thereto, and is therefore subject to seizure and forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1). In addition, John Kosta may have acquired the vehicle during the course of his § 846 conspiracy or § 841(a)(1) violation, which would entitle the United States to a rebuttable presumption that the vehicle may be seized under 21 U.S.C. § 853(d).

*2008 Chevrolet Silverado*

63. John Kosta purchased a grey 2008 Chevrolet Silverado, VIN 1GCHK23K08F184998, in February 2008. The vehicle is registered to John Kosta, 45 Riley Switch Rd., Phillipston, Massachusetts, and bears Massachusetts registration number 471-BS9.

64. Beginning May 2010 and continuing through September 2010, someone (presumably John or Tamara Kosta) made monthly finance payments totaling $6,344.44 for the 2008 Chevrolet Silverado to JP Morgan Chase using the funds in one of the Target Accounts Payments that was held in John Kosta's name (People's United Bank Checking Account #21114305).

65. Based on the foregoing, I have probable cause to believe the United States may forfeit the 2008 Chevrolet Silverado. Because the vehicle was financed with funds from one of the Target Accounts, the vehicle is derived from the proceeds of John Kosta's § 846 and § 841(a)(1) violations. The property is therefore subject to seizure and forfeiture under 21 U.S.C. § 853. Likewise, because the vehicle was financed with funds from one of the Target Accounts, the vehicle constitutes property involved in money laundering transactions in violation of 18 U.S.C. § 1956, or property traceable thereto, and is therefore subject to seizure and forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

*2010 Seadoo RxTx260 Jet Ski*

66. John Kosta purchased a 2010 Seadoo RxTx260 jet ski, VIN YDV17674E010, in July 2010. I believe this vehicle is now kept at 45 Riley Switch Rd., Phillipston, Massachusetts, however it is also likely that the jet ski is kept at John Kosta's lake house at 181 Krainewood Dr., Moultonborough, New Hampshire.

67. In July 2010, John Kosta entered into a financing agreement for the vehicle with BB&T/Sheffield Financial. Beginning in 2010 and 2011, someone (presumably John or Tamara Kosta) made payments on the loan from the funds in two of the Target Accounts, one held in the name of John Kosta (People's United Bank Checking Account #21114305) and one in the name of John Kosta Real Estate (TD Bank Checking Account #8244540064).

68. Based on the foregoing, I have probable cause to believe the United States may forfeit the 2010 Seadoo RxTx260 jet ski. Because the vehicle was financed with funds from two of the Target Accounts, the vehicle is derived from the proceeds of John Kosta's violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute marijuana) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana), and is therefore subject to seizure and forfeiture under 21 U.S.C. § 853. Likewise, because it was financed with funds from two of the Target Accounts, the vehicle constitutes property involved in money laundering transactions in violation of 18 U.S.C. § 1956, or property traceable thereto, and is therefore subject to seizure and forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1). In addition, John Kosta acquired the vehicle during the course of his § 846 conspiracy and § 841(a)(1) violation, entitling the United States to a rebuttable presumption that the vehicle may be seized under 21 U.S.C. § 853(d).

*2010 Seadoo Gtxis Jet Ski*

69. John Kosta purchased a 2010 Seadoo Gtxis jet ski, VIN YDV01588C010, in July 2010.  I

believe this vehicle is now kept at 45 Riley Switch Rd., Phillipston, Massachusetts, however

it is also likely that the jet ski is kept at John Kosta's lake house at 181 Krainewood Dr.,

Moultonborough, New Hampshire.

70. In July 2010, John Kosta entered into a financing agreement for the vehicle with

BB&T/Sheffield Financial.  Beginning in 2010 and 2010, someone (presumably John or

Tamara Kosta) made payments on this loan from the funds in two of the Target Accounts,

one held in the name of John Kosta (People's United Bank Checking Account #21114305)

and one in the name of John Kosta Real Estate (TD Bank Checking Account #8244540064).

71. Based on the foregoing, I have probable cause to believe the United States may forfeit the

2010 Seadoo Gtxis jet ski.  Because the vehicle was financed with funds from two of the

Target Accounts, the vehicle is derived from the proceeds of John Kosta's violation of 21

U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute marijuana) and

21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana), and is therefore

subject to seizure and forfeiture under 21 U.S.C. § 853.  Likewise, because it was financed

with funds from two of the Target Accounts, the vehicle constitutes property involved in

money laundering transactions in violation of 18 U.S.C. § 1956, or property traceable thereto,

and is therefore subject to seizure and forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and

982(a)(1).  In addition, John Kosta acquired the vehicle during the course of his § 846

conspiracy and § 841(a)(1) violation, entitling the United States to a rebuttable presumption

that the vehicle may be seized under 21 U.S.C. § 853(d).

22

### Forfeitability of the Assets: The Target Safe Deposit Box

72. John Kosta holds TD Bank Safe Deposit Box #3 at a TD Bank branch in Middleton, Massachusetts (232 South Main St, Middleton, MA 01949). John Kosta opened the box on February 23, 2007, and John Kosta is the sole lessee. The bank's log shows that the box has been accessed four times, with the most recent access coming on February 9, 2010.

73. During the period of the Kostas' money laundering conspiracy and John Kosta's drug trafficking conspiracy, the Kostas also maintained safe deposit boxes in Arizona. Tamara Kosta accessed one of these boxes on December 11, 2010. A day later, on December 12, 2010, one of her and John Kosta's co-conspirators, Fidencia Serrano-Esquer (a/k/a Fito), was arrested in possession of $287,000.00 cash after leaving John Kosta's Arizona residence. An analysis of John and Tamara Kosta's bank accounts from shortly before this period is not consistent with $287,000 being withdrawn for the purpose of paying Serrano-Esquer. (Most of the Kostas' withdrawals in this time period were used to pay mortgages, bills, and other seemingly legitimate expenses.) It is consistent with these facts and others relating to Serrano-Esquer's arrest that the $287,000 in Serrano-Esquer's possession on December 12, 2010 was removed from the safe deposit box that Tamara Kosta accessed on December 11.

74. Based on my training and experience, I know that it is ordinary and customary for drug traffickers to store the proceeds of their illegal activities in safe deposit boxes in order to have protected access to the proceeds and to avoid detection by law enforcement. Based on my training, experience, and information learned during the course of this investigation, I believe that the Target Safe Deposit Box was used to safeguard proceeds (or property derived from proceeds) of the Kostas' drug trafficking conspiracy and John Kosta's drug trafficking.

75. As a result, I have probable cause to believe that the Target Safe Deposit Box contains

property that constitutes proceeds or is derived from proceeds of John Kosta's violations of

21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute, marijuana)

and 21 U.S.C. § 841(a)(1) (possession with intent to distribute marijuana) and that is

therefore subject to seizure and forfeiture under 21 U.S.C. §§ 853 and 881.  In addition, I

have probable cause to believe that the Target Safe Deposit Box contains property involved

in (or traceable to property involved in) a violation of 18 U.S.C. § 1956(h) that is therefore

subject to forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

### Conclusion

76. As set forth below, I have probable cause to believe that the funds in the Target Accounts;

the contents of the Target Safe Deposit Box; and several of the Target Vehicles (the red 2008

Pontiac Grand Prix, the 2008 Chevrolet Silverado, the 2010 Seadoo RxTx260, and the 2010

Seadoo Gtxis) are subject to forfeiture to the United States under 21 U.S.C. § 853 as property

that constitutes proceeds or is derived from proceeds of violations of 21 U.S.C. §§ 846 and

841.

77. As further set for below, I also have probable cause to believe that the funds in the Target

Accounts and the contents of the Target Safe Deposit Box are subject to forfeiture to the

United States under 21 U.S.C. § 881 as money furnished or intended to be furnished in

exchange for controlled substances and money used or intended to be used to facilitate a

violation of 18 U.S.C. §§ 841 and 846.

78. As further set forth below, I also have probable cause to believe that the funds in the Target

Accounts; the contents of the Target Safe Deposit Box; and several of the Target Vehicles

(the red 2008 Pontiac Grand Prix, the 2008 Chevrolet Silverado, the 2010 Seadoo RxTx260,

24

and the 2010 Seadoo Gtxis) are subject to forfeiture to the United States under 18 U.S.C.

§§ 981(a)(1)(A) and 982(a)(1) as property involved in (or traceable to property involved in) a

violation of 18 U.S.C. § 1956(h).

79. Finally, as set forth below, I have probable cause to believe that one of the Target Vehicles

(the white 2010 Nissan Maxima) is subject to forfeiture to the United States under 21 U.S.C.

§§ 853 and 881 as property used to commit or facilitate the commission of violations of 21

U.S.C. §§ 846 and 841.

_____ SA/FBI

Stephen J. Kelleher

Special Agent

Federal Bureau of Investigation

Sworn and subscribed to before me this 6th day of August 2012.

The Honorable MARIANNE B. BOWLER

United States Magistrate Judge

25