**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
UNITED STATES OF AMERICA,      . CRIMINAL NO. 12-CR-10226
     Plaintiff                 .
                               . BOSTON, MASSACHUSETTS
          v.                   . JANUARY 2, 2013
                               .
KOSTA et al,                   .
     Defendant                 .
. . . . . . . . . . . . . . .  .
```

TRANSCRIPT OF RELEASE HEARING
BEFORE THE HONORABLE ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:  UNITED STATES ATTORNEY'S OFFICE
                     BY: Linda Ricci, AUSA
                     One Courthouse Way, Suite 9200
                     Boston, MA 02210
                     617-748-3100
                     linda.ricci@usdoj.gov


For the defendant:   Paul J. Garrity, Esq.
                     14 Londonderry Road
                     Londonderry, NH 03053
                     603-434-4106
                     garritylaw@myfairpoint.net


Court Reporter:

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

*Judy Bond Gonsalves*
**Certified Federal Court Transcriber**
**508.984.7003**

1  COURT CALLED INTO SESSION

2  (12:32:20 p.m.)

3          THE COURT:  You may be seated.

4          THE CLERK:  The case of United States versus John

5  Kosta, Criminal Action No. 12-10226, will now be heard

6  before this Court.

7          Will counsel please identify themselves for the

8  record.

9          MS. RICCI:  Good morning, Your Honor.  Linda Ricci

10 on behalf of the United States filling in for Assistant U.S.

11 Attorney Leah Foley.

12         THE COURT:  Good afternoon.

13         MR. GARRITY:  Good afternoon, Your Honor.  Paul

14 Garrity for John Kosta.

15         THE COURT:  Good afternoon.

16         The questions that have been brought up with the

17 clerk, let me go over those.

18         With respect to Condition No. 3, the -- anytime

19 he's going to leave the residence, it's part of the

20 procedures of Pretrial Services that they have to be

21 previously notified and notified when he's coming back, so

22 that's why it's not explicitly in Paragraph 3, that it's

23 part of the whole process, and so obviously he would not be

24 able to leave the residence without notifying Pretrial

25 Services in advance or else the alarm would go off.  So that

1  was that one.

2          I am not going to put anything in witnesses until

3  we know who the witnesses are, because otherwise it's too

4  vague.

5          If you want to file a motion when Ms. Foley gets

6  back asking to add conditions of release and Mr. Garrity

7  could respond to it, I'd consider that, but I'm not going to

8  add anything at this point in time.

9          With respect to the bonds, what I have done is I

10 understand that with the bond in Mrs. Kosta's case and the

11 $400,000 bond in that I'm proposing for Mr. Kosta's case at

12 5 Hemlock Circle, the two of them exceed by probably about

13 75,000 the equity in the house.  But here's where I'm coming

14 from.

15          I want that if Mr. -- you know, if Mrs. Kosta

16 flees, $200,000 in the equity goes to the Government.  If

17 Mr. Kosta flees and Mrs. Kosta doesn't, $400,000 equity in

18 the house is forfeited to the Government.  If they both

19 flee, they'll take all the equity.  It might not amount to

20 $600,000, but I think it was 527 what was on the papers.

21          But that was my thinking behind that.  I do

22 understand there's an overlap there.

23          MR. GARRITY:  Just, just if I could clarify?  I'm

24 not the brightest one on this subject.

25          THE COURT:  Well, I'm not either, so we're in the

4

1  same boat.

2          MR. GARRITY:  So it would be 400,000 if Mr. Kosta

3  leaves, 200 if Mrs. Kosta leaves, but the bond would be 400

4  in total.

5          THE COURT:  The bond for Mr. Kosta on that

6  property --

7          No.  The total bond is 600,000.  It's 400,000 on

8  Middleton and 200,000 on Lynn, so for Mr. Kosta the total

9  bond is 600,000.

10          But I understand that if -- that if both of them

11  flee, the Government's not going to be able to get the total

12  amount out of Middleton, but that's the way I'm leaving it.

13          MR. GARRITY:  But the property in Middleton -- if

14  the equity remaining after Mrs. Kosta's bond is say 325 or

15  350, --

16          THE COURT:  Right.

17          MR. GARRITY:  -- does the balance have to be

18  secured by some other sort of --

19          THE COURT:  No.  No.  No, if -- no, we treat them

20  as separate defendants.

21          If for some reason she flees and 200,000 of the

22  equity goes but Mr. Kosta remains, he'd be subject -- and if

23  he left then after that, it would be the remaining equity in

24  Hemlock Circle plus the 200 in Lynn.

25          MR. GARRITY:  But just, Judge, I've got another

1  attorney working on the title part of it, because I don't

2  know how to do this stuff.

3           But the bond that would be posted, would it be the

4  balance of the equity?

5           THE COURT:  No.  The bond is going to be for

6  $600,000 for Mr. Kosta secured by the equity in both

7  properties.

8           MR. GARRITY:  Right.

9           THE COURT:  Okay?  Which would total $600,000.

10          The bond for Mrs. Kosta is $200,000 secured by the

11 equity in Hemlock.  Those are the two things.

12          As I say, what can be recovered if both of them

13 flee very well may be less than the amount that is being

14 pledged, but it also could be the value of the house has

15 increased, and there's more equity in it than we know about.

16 But that's the way I'm setting it up.

17          Is there a problem?  Do you see a problem?  If you

18 do, let me know.

19          MR. GARRITY:  Yeah, I apologize for being kind of

20 dense on this.

21          Say if the balance of the equity does not equal

22 400,000 --

23          THE COURT:  Then they'd be liable for -- they'd be

24 personally liable for the remainder.

25          MR. GARRITY:  Okay.  So the bond would be posted

1  just secured by the balance of the equity.

2          THE COURT:  Right.

3          MR. GARRITY:  Okay.

4          THE COURT:  So in other words, they're on the hook

5  for 600,000 with respect to John Kosta.  If he flees, the

6  equity of both properties --

7          For example, if they both flee, and there's not

8  enough equity to cover the total amount, they'd be

9  personally liable for remainder, but it's unsecured.

10          MR. GARRITY:  I understand, Judge.

11          THE COURT:  Okay.

12          MR. GARRITY:  Thank you.

13          THE COURT:  Okay.  I understand the Government

14  objects to my order setting conditions of release, and I

15  understand that.  You have the right to request that Judge

16  Casper review it, and you're certainly free to do that.  Let

17  me say --

18          And if you want to get a transcript of remarks

19  here.  Or Mr. Garrity.  The Government --

20          Because the Government's not going to particularly

21  like what I say.

22          But if you want to get a transcript of this, use

23  -- to be reviewed by Judge Casper, feel free to do that

24  through --

25          Ms. Russo could tell you how to do that.

1          But basically, I've given this a great deal of

2    thought.  I've taken a lot of time as is obvious.  But I am

3    of the view that these conditions will reasonably assure the

4    safety of the community and reasonably assure that Mr. Kosta

5    will appear for all future proceedings.

6          I don't see these conditions -- I don't see him

7    engaging in criminal conduct while these conditions are in

8    place.  He's severely restricted in his ability to move or

9    do anything, and I just don't see there's any -- I think

10   these conditions will reasonably assure that.

11         I think the more important question was

12   appearance, and I take into account the following.

13         Now, I will say that this case involves a narcotic

14   drug which is one of the things that I'm supposed to take

15   into account.  And also I will say that I think the

16   Government's evidence is fairly strong, and I think it's

17   likely Mr. Kosta's going to be convicted.  So on those two

18   indicia I think that the Government's -- supports the

19   government's position.

20         However, I've looked at the record, and it appears

21   that Mr. Kosta although having been subjected to some

22   serious criminal charges in the past, seems to have always

23   appeared.  And looking at the -- we dug into the court

24   records, and looking at defaults it looks like he was, you

25   know, fair to respond to a summons or something of that

1 sort.  It doesn't appear that he ever willfully failed to

2 appear, so I'm taking that into account.

3        I'm also taking into account the fact that

4 obviously he's very fortunate to have parents who have this

5 amount of equity that they are able to put up -- real estate

6 equity that they're able to put up to reasonably assure his

7 appearance.  If there were not a substantial financial

8 component, I would not release him.  But the fact that there

9 is that amount of money that they're willing to put up in

10 order to assure his appearance, I think that amount of money

11 is sufficient to keep him here.  I mean, basically if he

12 fled, he'd wipe his parents out.

13        And I also take into account that -- although his

14 wife is a co-defendant -- that there appears to be a very

15 strong family bond here.  He's got ten children.  I think

16 nine of them reside now with his parents where he and his

17 wife will reside.  I don't see him fleeing without the

18 children, and I don't see him fleeing with the children.

19        Again, the statute doesn't require that these

20 conditions guarantee his appearance.  They only -- the

21 statute requires that the conditions will reasonably assure

22 his appearance.  And based on, as I say, these factors which

23 I've just mentioned, I find these conditions of release

24 would, so I'm going to set them.

25        I understand that you need some time to do the

1 real estate, Mr. Garrity.

2          MR. GARRITY:  That's right.

3          THE COURT:  There won't be a release today.  He

4 won't be ordered released until you show me that you've

5 complied with that.

6          With respect to the United States, what you would

7 need to do if you don't want him released pending the review

8 is to file a motion for a stay with me.  The way the rules

9 work, you file a motion for a stay with me.  If I allow it,

10 his release is stayed.  If I deny it, you can ask Judge

11 Casper for a stay.  That's the procedure that you've got to

12 use with respect to that.  Okay?

13          MS. RICCI:  Yes.

14          THE COURT:  Okay.  I'm not going to go over this

15 in the detail that I did before, because Mr. and Mrs.

16 Mihalakakis went through this drill with me before with

17 respect to his -- with respect to Tamara Kosta, but let me

18 at least go over conditions with John Kosta.

19          Would you stand, sir?

20          I'm going to set these conditions of release which

21 you are subject to pending the ultimate result of this case,

22 either conviction or acquittal, whichever it is; but these

23 conditions are going to apply.

24          You're going to be living only at 5 Hemlock Circle

25 in Middleton and no other location.

1           Do you understand that?

2           THE DEFENDANT:  Yes.

3           THE COURT:  You're released to the third-party

4  custodian of your parents.

5           Do you understand that?

6           THE DEFENDANT:  Yes.

7           THE COURT:  And I'll explain to you a little bit

8  more about third-party custodianship in a moment.

9           You'll be subject to electronic monitoring at the

10  residence.

11          One thing.  Do we need two land lines since there

12  are two people --

13          PRETRIAL SERVICES:  No, Your Honor.  I asked Mr.

14  Moriarty, and he said that he's able to install two

15  electronic --

16          THE COURT:  On one land line.

17          PRETRIAL SERVICES:  Yes.

18          THE COURT:  Okay, thanks.

19          You're going to be subject to electronic

20  monitoring, and that means you can't leave the residence

21  except for the purposes that I've listed here:

22          For the purpose of attending a

23  previously-scheduled appearance in a court;

24          For the purpose of visiting your attorney who's

25  representing you in a pending criminal matter;

1              For the purpose of seeking medical care;

2              And for the purpose of performing administrative

3 tasks for which your presence is required in connection with

4 your children.

5              Those are the only reasons you can leave the

6 house.

7              In order to leave the house for any of those

8 purposes, you have to comply with all of the procedures of

9 Pretrial Services which is going to mean letting them know

10 ahead of time, getting their permission to leave, and

11 they'll set forth certain conditions that you've got to meet

12 including calling them when you return home.  But they'll

13 explain that to you fully, but you've got to comply with all

14 of their procedures.

15              In addition, whenever you're out of the residence

16 for any of these purposes, you have to be always in the

17 actual physical presence of either your mother or your

18 father or both.  Do you understand that?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Land line telephone at the residence

21 with features removed that are incompatible.  I assume

22 that's been taken care of.

23              I'm going to issue a warrant for your arrest.

24 It's going to be undated, but I'm going to sign it today.

25 It will not be executed unless the alarm goes off indicating

1 you fled.

2        But I want you to know that if that alarm goes off

3 and they notify me, I authorize them to just put the date on

4 it, and that warrant is in effect.

5        Do you understand that?

6        THE DEFENDANT:  Yes.

7        THE COURT:  You're not to apply for a passport or

8 any type of travel documents while on release.

9        Do any of your children have passports, Mr. Kosta?

10        THE DEFENDANT:  No.

11        THE COURT:  All right.  Your travel's restricted

12 to Essex, Middlesex and Suffolk Counties in Massachusetts.

13        You're not to possess any firearms, destructive

14 devices or dangerous weapons, and there are to be none at

15 the residence at which you're living.

16        You're not to use alcohol to excess, and shall not

17 use or possess any narcotic controlled substances except by

18 a legal prescription.

19        The day you're released, you're going to have to

20 submit to a drug test for Pretrial Services and submit to a

21 drug test any time they tell you that you need to.

22        Do you understand that?

23        THE DEFENDANT:  Yes.

24        THE COURT:  If you have any contact or if you're

25 arrested or have any contact with law enforcement, you must

1  notify Pretrial Services within 24 hours.

2          Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  You're not to commit any crimes while

5  on release including any crimes that prohibit obstruction of

6  justice.

7          You're not to intimidate, threaten or injure any

8  witnesses, intimidate threaten or injure any informants or

9  do any act that obstructs the judicial process.

10         In addition, you're not to commit any other

11 crimes.

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Your release is going to be secured by

15 a $400,000 bond secured by the equity at 5 Hemlock Circle

16 (you and both of your parents will have to sign that bond.)

17 and a 200,000 bond secured by the equity in the dwelling at

18 361 Maple Street in Lynn, and the three of you -- you and

19 your parents -- will have to sign that bond.

20         Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  And you're not to have any contact

23 either directly or indirectly except through your attorney

24 with any co-defendants other than your wife.

25         Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, third-party custodianship is a

3 concept that we have in the law which allows people who are

4 not party to the lawsuit --

5          The lawsuit's between the United States and you.

6 Your parents are not party to this lawsuit, so that's why

7 they're called third-party custodian.

8          What they did is undertake a legal obligation to

9 the Court voluntarily in connection with the case against

10 you, and what they agree to do is to supervise you while

11 you're on pretrial release and ensure that you comply with

12 these conditions of release.

13          Their loyalty is not to you; their loyalty is to

14 the Court.  But, of course, you benefit from them being

15 third-party custodians, but they're not doing this legally

16 -- I'm sure they're doing it for you, because you're their

17 son.  But legally they are agents of the Court acting for

18 the Court.

19          Now, this means a couple of things.  That if you

20 violate any of these conditions of release, they're

21 obligated to call Pretrial Services and notify them, even

22 though that may result in you going to jail.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  That's an example of what I'm saying

1  where their loyalty is to the Court.  Their obligation's to

2  the Court, not to you.

3           And if they give you any directions in connection

4  with these conditions of release, it's like the Court giving

5  you directions, because they're acting as agents of the

6  Court.

7           Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Do you agree to accept them as

10 third-party custodians knowing the role that they are

11 required to take?

12          THE DEFENDANT:  I do.

13          THE COURT:  Okay.  Do you have any questions about

14 these conditions?

15          THE DEFENDANT:  I don't.

16          THE COURT:  All right.  You may be seated.

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  If Mr. and Mrs.

19 Mihalakakis would stand, please?

20          As I say, I'm not going to go through this in

21 detail with you, because we did this when Mrs. Kosta was

22 released, but I just want to make sure you understand that

23 you're going to now be third-party custodians not only of

24 Mrs. Kosta but of Mr. Kosta.

25          Do you understand that?

1          MRS. MIHALAKAKIS:  Yes.

2          THE COURT:  And do you understand that as

3 third-party custodians, you're required to report any

4 violations of these conditions that occur, even though that

5 may end up with Mr. Kosta going back to jail?

6          Do you understand that?

7          MRS. MIHALAKAKIS:  Yes.

8          THE COURT:  Do you agree to do that?

9          MRS. MIHALAKAKIS:  Yes.

10          THE COURT:  Now, with respect to the real estate,

11 basically you're already obligated 200,000 of the equity in

12 the property on Hemlock Circle is encumbered as part of Mrs.

13 Kosta's release.

14          So with respect to Mr. Kosta's release, the amount

15 is going to be 200,000 on the Lynn property and 400,000 on

16 the Hemlock Circle property.

17          And basically I take it you understood what I said

18 with Mr. Garrity.  If Mrs. Kosta flees or Mr. Kosta stays

19 home, you lose 200 in the equity in Hemlock Circle.  If Mrs.

20 Kosta stays and Mr. Kosta flees, you lose 400,000 of the

21 equity in Hemlock Circle and 200,000 of the equity in the

22 Lynn property.  If they both flee, basically you lose the

23 200,000 equity in the Lynn property and you lose the entire

24 equity probably in the Hemlock Circle property.  And if the

25 equity in the Hemlock Circle property doesn't come up to the

1  amount of the bond, then you'll be personally liable for

2  that amount.

3          Mr. Mihalakakis, do you understand what I've said?

4          MR. MIHALAKAKIS:  Yes.

5          THE COURT:  And do you agree to put the property

6  up in these circumstances?

7          MR. MIHALAKAKIS:  Yes.

8          THE COURT:  And Mrs. Mihalakakis, do you

9  understand?

10         MRS. MIHALAKAKIS:  Yes.

11         THE COURT:  And do you agree to put the property

12 up?

13         MRS. MIHALAKAKIS:  Yes.

14         THE COURT:  Okay.  Any questions?

15         All right.  Thanks very much.  You may be seated.

16         Yes, ma'am?

17         MS. RICCI:  Your Honor, if I may, I just --

18 because I hadn't spoken earlier, I just wanted to --

19         The Government does object to the entry of the

20 order setting conditions of release.  Understanding what the

21 Court --

22         THE COURT:  Big surprise.

23         MS. RICCI:  -- had earlier --

24         THE COURT:  I knew that.

25         MS. RICCI:  I just wanted to put it on the record,

1 Your Honor.

2          I understand that the Court had inquired earlier

3 with the parties as to any proposed changes, --

4          THE COURT:  Right.  Right.

5          MS. RICCI:  -- and then you had discussed those.

6          THE COURT:  Your rights are saved.

7          MS. RICCI:  But I just wanted to put on the record

8 that we --

9          THE COURT:  You object.

10          MS. RICCI:  And then I also --

11          Procedurally, Your Honor, I had intended to move

12 for a stay of the entry of the Court's order today, but I

13 understand from the Court's comments you require that it be

14 in writing.

15          THE COURT:  Exactly.

16          MS. RICCI:  Okay.

17          THE COURT:  Nothing's going to happen today, --

18          MS. RICCI:  Practically speaking.

19          THE COURT:  -- because Mr. Garrity has to do some

20 things with respect to the real estate and notify the clerk.

21 When that's all done, and file the necessary papers.

22          MS. RICCI:  Okay.  And then in terms of -- if I

23 might just --

24          THE COURT:  Sure.

25          MS. RICCI:  -- for clarification?

1          On Paragraph 7 the travel restriction?  The

2 Middlesex component of that, I take it, relates only to

3 travel, because I reviewed a quick map of the state, and it

4 looks to me as though to travel from Essex to Suffolk you

5 may have to travel through Middlesex.

6          THE COURT:  Right.

7          MS. RICCI:  But based on my conversation with Mr.

8 Garrity, there's no other reason that he would need to

9 travel to Middlesex County.

10          THE COURT:  No.

11          MS. RICCI:  Okay --

12          THE COURT:  Well, I don't know.  He might have a

13 doctor in Middlesex County.

14          MS. RICCI:  If he had a doctor's appointment or

15 something on that nature.

16          In terms of the bond, I'm not -- if in fact -- I'm

17 not -- does the Court -- is it the case --

18          Does the Court know that he can have the

19 properties secure both mortgages?

20          THE COURT:  Well, they're putting mortgages on

21 both properties.

22          MS. RICCI:  Okay.  Okay.

23          THE COURT:  And there'll be two mortgages on the

24 Hemlock property:  The one for Mrs. Kosta and the one for

25 him.

1          So I'm basically encumbering all the -- with

2  respect to both of them, encumbering all of the real estate

3  that Mr. and Mrs. Mihalakakis own, which is what my purpose

4  was.

5          MS. RICCI:  Okay.  If that were not able to

6  happen, then I was going to suggest -- the Government would

7  suggest a cash component to make up the difference.

8          THE COURT:  How would that not happen?

9          MS. RICCI:  I just don't know technically speaking

10 whether it can be recorded in the way the Court's proposed.

11         THE COURT:  You can put mortgages on -- you can

12 put mortgages on a property and then -- you don't necessary

13 --

14         I mean, usually banks wouldn't put a mortgage on a

15 property if it exceeds the fair market valuation, but

16 there's no prohibition to putting mortgages on a property

17 even though the amount of the mortgage exceeds the fair

18 market value.

19         MS. RICCI:  As respect to Paragraph 14, the

20 Government will file a motion seeking an entry of a

21 no-contact order with particularly-named witnesses.

22         THE COURT:  Okay.  What I'll do with that is see

23 what Mr. Garrity says about it.  If there's no objection,

24 I'll issue an amended order.

25         MS. RICCI:  And I'll also order the transcript

1 from the earlier detention hearing and likely today's

2 session.

3         THE COURT:  Okay.

4         MS. RICCI:  Thank you, Your Honor.

5         THE COURT:  Thank you very much.

6         Anything further from the Government?

7         MS. RICCI:  No, Your Honor.

8         THE COURT:  Anything further, Mr. Garrity?

9         MR. GARRITY:  Judge, just Paragraph 13.  I just

10 want to make sure I understand mechanically.

11         THE COURT:  I guess I'm causing more trouble in

12 this.

13         MR. GARRITY:  The bond is 400,000 to be secured by

14 the remaining equity.  Is that what the Court meant?

15         THE COURT:  Right.  Basically.  Basically Mr. John

16 Kosta and his parents signed two bonds:  one for 400,000 and

17 one for 200,000.  Those are bonds that obligate them to pay

18 that amount of money should he fail to appear.  They're

19 secured by 200,000 -- the two bonds are secured by 200,000

20 in the Lynn property and 400,000 in the Hemlock Circle

21 property.

22         If in fact -- now, it very well --

23         As I indicated, it may be that the amount of the

24 -- if both of them flee, that the amount of the equity does

25 not come up to in the Hemlock Circle property the 600,000,

1  but it's close.  The assessed valuation is 5.7.  But if it

2  didn't, the three of them would be personally liable for the

3  remainder.

4           MR. GARRITY:  I understand it, Judge.  The only

5  reason I ask is the person who's doing the title work --

6           THE COURT:  Well, the person who's doing the title

7  work will probably come up with a mortgage on the -- the

8  mortgage that's already on file for the Hemlock Circle

9  property for Mrs. Kosta.

10           MR. GARRITY:  Right.

11           THE COURT:  But there shouldn't be any other

12  encumbrance.

13           MR. GARRITY:  Right.

14           THE COURT:  And Lynn, I assume, is good title.

15           MR. GARRITY:  Judge, I ask these, because I'm --

16           THE COURT:  No, that's all right.  I hope I'm

17  answering them.

18           MR. GARRITY:  I think you have.

19           But if the amount of the equity is, say, 327, --

20           THE COURT:  Yep.

21           MR. GARRITY:  -- there shouldn't be any problem

22  with that --

23           THE COURT:  I don't think so.  I think you can --

24           As I say, a bank wouldn't give you a mortgage if

25  the amount of your mortgage is more than the assessed

1  valuation or the appraised valuation, but I don't think

2  there's any prohibition in real estate law from putting a

3  mortgage on a property, even though the mortgage exceeds the

4  value of the property.  I just don't think --

5           If it's a problem, let me know, and I'll work with

6  you on it.

7           MR. GARRITY:  Okay.

8           THE COURT:  But that's -- that was the philosophy

9  behind what I was doing, and it's on the basis of the fact

10 that that much money being put up, that I -- it's one of the

11 factors that I indicated suggests to me that these

12 conditions will reasonably assure his appearance.

13          MR. GARRITY:  And I guess I didn't ask the

14 question the right way.

15          Would the 400,000 bond cause problems with 327

16 mortgage?  I guess maybe that's the way --

17          THE COURT:  With what?

18          MR. GARRITY:  With the amount of the bond 400,000

19 --

20          THE COURT:  No.  The mortgage is going to be for

21 400,000.

22          MR. GARRITY:  That's where I -- that's where I

23 kind of go off the rails with this.

24          THE COURT:  All right.  Let me -- if I'm wrong on

25 this, contact your lawyer and let me know.  Because as I

1 say, I'm not that much up on real estate law either.

2          But I don't think there's any prohibition of

3 putting mortgages on a property even though the amount --

4 total amount of the mortgages exceed the either assessed or

5 appraised valuation.  So that's why I'm saying that you can

6 have the original 200,000 mortgage of Mrs. Kosta on the

7 property and the $400,000 mortgage for Mr. Kosta on the same

8 property.  I don't see that as a problem.

9          If it is a problem, please let me know.

10          MR. GARRITY:  I will.

11          THE COURT:  So that gets the mortgages on the

12 property.

13          Now, what would happen if, in fact, there's a

14 flight?  If Mrs. Kosta flees, 200,000 of the equity is taken

15 for the Government.  If Mr. Kosta flees, 400,000 of the

16 equity is taken and 200,000 in Lynn.  If they both flee,

17 basically the 200,000 from Lynn is taken, and they can take

18 up to 600,000 out of the equity in Hemlock Circle.

19          What I'm saying is I don't think that what can

20 happen if they flee has an affect on the ability to record

21 the mortgages that I've set.  But if it does, let me know,

22 and I'll work with you on it.  Okay?

23          MR. GARRITY:  Thank you.

24          THE COURT:  All right.  The defendant's remanded

25 to the custody of the United States Marshals.

25

1          And Mr. Garrity, if you'd be sure and let us know

2  when you've done everything you need to do.

3          MR. GARRITY:  I will.

4          THE COURT:  And I'll await the Government's motion

5  for a stay which you will have the opportunity to appear --

6  I'll probably put you on a little short lease on opposing

7  that.

8          MR. GARRITY:  That's fine.

9          THE COURT:  But we'll wait until we get those

10  files.

11          Okay.  Thanks very much.

12          MR. GARRITY:  Thank you.

13          THE CLERK:  All rise.

14      (Court adjourned at 12:58:53.)

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATION

2        I, Judy Bond Gonsalves, a court approved transcriber,

3   certify that the foregoing is a correct transcript from the

4   official electronic sound recording of the proceedings in

5   the above-entitled matter.

6

7

8   _____        February 11, 2013
    Judy Bond Gonsalves

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Judy Bond Gonsalves*
**Certified Federal Court Transcriber**
**508.984.7003**