## UNITED STATE DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 12-10226-DJC |
| V. | ) | |
| | ) | |
| JOHN KOSTA | ) | |
| Defendant | ) | |
| | ) | |

### ACCUSED'S MEMORANDUM IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT

NOW COMES the accused, John Kosta, and in support of his Motion to Suppress Evidence Seized Pursuant to a Search Warrant submits the following memorandum.

### FACTUAL BACKGROUND

On August 6, 2012, the United States District Court (M.J., Bowler) issued a search warrant authorizing the search of the residence located at 45 Riley Switch Road, Philipston, Massachusetts.  The search warrant was based on the affidavit of FBI Special Agent Stephen Kelleher.

The search warrant was executed on August 7, 2012, and following entry into the residence, it was thoroughly searched by a number of government agents and a number of items in the residence were located and seized.

### ARGUMENT

1.  Lack of Nexus

The affidavit of Agent Kelleher, although outlining a fairly extensive investigation starting in 2009, failed to establish probable cause for the search of 45 Riley Switch Road, as the affidavit failed to demonstrate a nexus between the outlined drug investigation and the 45 Riley Switch Road residence.  In order to support the issuance of a search warrant, a "search warrant application must demonstrate probable cause to believe that: 1) a crime has been committed, and 2) enumerated evidenced of the offense will be found at the place to be

searched – the so-called 'nexus' element." <u>United States v Hicks</u>, 575 F. 3d 130, 136 (1st Cir. 2009). In reviewing an application for a search warrant, the issue is whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. "Put differently, the application must give someone of "reasonable caution" reason to believe that evidence of a crime will be found at the place to be searched." <u>United States v. Ribeiro</u>, 397 F.3d 43, 49 (1st Cir. 2005). "The probable cause nexus between enumerated evidence of the crime and the place can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime]." Id; <u>United States v. Charest</u>, 602 F.2d 1015, 1017 (1st Cir. 1979). In addition, an agent's training and experience, although entitled to some weight, standing alone, may not be enough to satisfy the nexus element. <u>Ribeiro</u>, 397 F.3d at 49-50; <u>United States v. Rosario</u>, 918 F. Supp. 524 (1996).

In the instant case, Agent Kelleher's affidavit certainly outlined an extensive drug trafficking investigation in Arizona and supported the issuance of a search warrant for the accused's home in Arizona. (See, Affidavit ¶ 12, 13, 14, 16, 17 18-20). However, the nexus between this Arizona information and the house at 45 Riley Switch Road was lacking.

In his affidavit, Agent Kelleher stated that the FBI began their investigation into this matter in 2009 and that the investigation determined that the accused was purchasing large quantities of marijuana in Arizona and transporting it back to an unspecified location in Massachusetts (Affidavit ¶ 9). The affidavit then goes on to recount an incident in September, 2010 involving an individual identified as "Fito" at the Burlington Mall. The incident, which took place on September 4, 2010, and which was surveiled and videotaped by FBI agents involved "Fito" meeting with four individuals in the Mall parking lot. During this meeting, the surveiling agents observed the transfer of a number of black duffel bags from one vehicle to another and that one of the bags contained large bundles of cash. The agents then followed the "caravan" of cars that left the parking lot until it reached the Connecticut state line, with a ping on "Fito"'s phone confirming that he eventually returned to Arizona. The affidavit then recounts that analysis of "Fito"'s phone records resulted in the identification of John Kosta and John Kosta's phone at an unspecified time. The affidavit, however, does not indicate in any way that John

Kosta or his phone was involved in this transaction nor is there any indication in the affidavit connecting this event with 45 Riley Switch Road. (Affidavit ¶ 11).

The affidavit then, in a further attempt to connect 45 Riley Switch Road with the Arizona drug investigation, proceeded to outline a November, 2011 trip from Arizona to the Philipston house involving John Kosta and Donald McCormack. As described in the affidavit, the accused's pickup truck and a pickup truck registered to Donald McCormack were observed by a pole camera installed near the accused's Arizona home leaving the driveway of that home and driving off together. Three days later, November 27, 2011, these same two trucks arrived at the Philipston residence. (Affidavit ¶ 15, 26). Following the arrival of the trucks at the Philipston house, in a further attempt to establish a nexus to the Philipston house, the affidavit states that the agents noted a marked increase in the car traffic in and out of the residence. (Affidavit ¶ 15, 27)[1]. The affidavit, however, does not relate any facts indicating that any drugs were in the trucks that arrived at the Philipston house, that any drugs were transferred from the trucks into the Philipston residence nor were any drug transactions observed. The affidavit does, though, outline the December 4, 2011, arrest of Napoleon Alexander who was taken into custody on that date after leaving the Philipston house, when it was determined he had 46 pounds of marijuana in his car. (Affidavit ¶ 15, 27-30). The warrant contains no indication as to where Napoleon had been prior to his arrival at 45 Riley Switch Road, nor how long he was at the residence. There are no facts related in the affidavit outlining any activity indicative of drug activity by Napoleon while at 45 Riley Switch Road. There were no facts indicating Napoleon resided at the house. Based on the facts outlined in the affidavit, there is no indication whatsoever that Napoleon obtained the marijuana while at the Philipston house. In fact, based on the assertion in the affidavit that the marijuana found in Napolean's possession was wrapped in the same contact paper as that located in a trash pull at the Accused's Arizona home it was more likely that the marijuana came from the accused's Arizona home. (Affidavit ¶ 29).

The affidavit further provided that cell phone interceptions between December 14, 2012, revealed that John Kosta was calling associates to negotiate the purchase of marijuana.

---

[1] This assertion is one of the material misrepresentations in the affidavit that the accused, as addressed later in this memorandum, submits warrants a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

This activity all occurred in Arizona.  The cell phone intercepts indicated that the marijuana would be delivered to the accused's residence in Arizona and eventually transported to an unspecified Massachusetts destination.  (Affidavit ¶ 17).  On December 17, 2011, 1,000 pounds of marijuana was reportedly delivered to Kosta's residence in Arizona.  That marijuana was apparently loaded into a white pickup truck.  That white pickup truck left the accused's Arizona residence in early January, 2012 as part of a caravan of three vehicles, driven by the accused, Donald McCormack and Dennis Novicki.  (Affidavit ¶ 18-20).  On January 6, 2012, the white pickup truck driven by Donald McCormack was stopped for speeding in South Dakota.  A subsequent search of the truck resulted in the seizure of 980 pounds of marijuana located in the truck.  (Affidavit, ¶  20).  The accused's vehicle and Novicki's truck arrived at 45 Riley Switch Road on January 9, 2012.  (Affidavit ¶ 21).  There were no facts related in the affidavit that the ultimate destination for  the marijuana was 45 Riley Switch Road.

        The affidavit also relates, in various paragraphs, Agent Kelleher's opinion, without supporting facts, that the Philipston residence was being used to store and distribute marijuana.  (Affidavit ¶ 25, 32, 34, 47).  These unsupported beliefs and the facts outlined in the affidavit did not establish a nexus between the criminal activity of the accused in Arizona and the home located in Philipston, nor could they.  See, United States v. Rosario, 918 F. Supp. 524 (D.R.I. 1996).  Further, the references in the affidavit stating  that the accused was shipping marijuana to an unspecified Massachusetts location provided no factual underpinning for a reasonable belief that the ultimate destination for the  marijuana was 45 Riley Switch Road.  And the only ostensible drug connection to 45 Riley Switch Road, Napoleon Alexander's December 4, 2011 arrest, was bereft of facts that would lead one to believe that Napoleon had obtained the marijuana while at the house.  Adding the assertion by Agent Kelleher that the accused in May, 2012 crossed into the United States from Mexico does not assist in establishing a nexus to 45 Riley Switch Road, especially where  the affidavit provides no facts connecting this crossing to 45 Riley Switch Road and no facts in support of Agent Kelleher's opinion that the accused went to Mexico to conduct drug business.  (Affidavit ¶ 33).  Accordingly, given the lack of nexus, there  was no probable cause established for  the search of 45 Riley Switch Road.  Illinois v. Gates, 462 U.S. 212 (1983).

2.   Material Misrepresentation and Omission

Perhaps recognizing the weakness of the nexus to 45 Riley Switch Road, Agent Kelleher made assertions and omissions that the accused submits amount to material misrepresentations and material omissions.  Specifically, the accused submits that Agent Kelleher made material misrepresentations in Paragraph 15 and 27 in describing the car traffic going in and out of 45 Riley Switch Road upon the arrival of the accused and Donald McCormick at the home in November, 2011.  Specifically, in Paragraph 15, Agent Kelleher stated "agents noted a marked increase in car traffic in and out of [45 Riley Switch Road]" and in Paragraph 27 Agent Kelleher claimed "[i]n the dates following John Kosta's return to [45 Riley Switch Road], the pole camera captured an increase in the number of vehicles traveling to and from [45 Riley Switch Road], which is located on a remote road that normally does not have a heavy volume of traffic."  The accused submits that these assertions, made apparently in an attempt to make the car traffic consistent with drug activity, were not true as the car traffic going in and out of 45 Riley Switch Road was minimal, consisted primarily of vehicles driven by the accused and family members and certainly did not constitute a "marked increase in car traffic", especially when compared with other surveillance reports of the residence on earlier occasions.  (See attached reports).  The accused submits that this was an intentional misrepresentation or, at the very least, was made with reckless disregard for the truth, especially where Agent Kelleher related in his affidavit that he had reviewed reports prepared by agents in the case and had discussed the case with them.  (Affidavit ¶ 5).  The accused submits that these misrepresentations were material as absent these assertions the arrival of the accused at his Philipston home on November 27, 2011 was unremarkable with no discernible nefarious connection of 45 Riley Switch Road with Napoleon Alexander's December 4, 2011 arrest other than he had been there prior to his arrest.

The accused further submits that Agent Kelleher made a material omission in not relating in his affidavit that the accused owned a number of pieces of real estate in Massachusetts, aside  from those outlined in the affidavit in support of the search warrant, as well as a house in New Hampshire.  (See, Drug Forfeiture Allegations of Superceding

Indictment).  The accused submits that given his position as Case Agent on this case, Agent Kelleher was certainly aware of the accused's real estate holdings.  As a result, the omission of this information was either done intentionally or with reckless disregard for the truth.  The accused submits that this omission was material to the determination of probable cause as including this information would have further countered any inference that the accused used his 45 Riley Switch Road home to store or distribute drugs or maintain records and/or cash[2], thereby undermining the nexus to 45 Riley Switch Road.

The accused submits that he is entitled to a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), as he submits that he has made a substantial preliminary showing that the warrant affidavit contains a false statement or omission made knowingly and intentionally, or with reckless disregard for the truth and that the allegedly false statement or omission was necessary to the finding of probable cause.  <u>United States v. Rigaud</u>, 684 F.3d 169 (1st Cir. 2012). "To determine the sufficiency of the affidavit, excluding the contested sentence, we look to whether the totality of the circumstances stated in the affidavit demonstrates probable cause to search either the premises or the person".[3] <u>Hicks</u>, 575 F.3d at 138; <u>United States v. Barnes</u>, 492 F.3d 33, 36 (1st Cir. 2007).  The accused submits that absent the misrepresentations and with the addition of the omitted information any claim of nexus between the drug activity in Arizona and the home at 45 Riley Switch Road is substantially undermined.  Accordingly, a <u>Franks</u> hearing is warranted.

3.   Stale Information

"[I]t is axiomatic by now that under the fourth amendment the probable cause upon which a valid search warrant must be based must exist at the time at which the warrant was issued, not at some earlier time."  <u>United State v. Jeanetta</u>, 533 F.3d 651, 654-55 (8th Cir. 2008).

---

[2] <u>United States v. Feliz</u>, 182 F.3d 82, 87-88 (1st Cir. 1999)
[3] Although "[t]here is an important difference between the necessary inquiries when the challenge is to the omission of an allegedly material fact rather than to the inclusion of an allegedly false material statement.  With an omission, the inquiry is whether its inclusion in an affidavit would have led to a negative finding to the magistrate on probable cause.  If a false statement is in the affidavit, the inquiry is whether its inclusion was necessary for a positive finding by the magistrate on probable cause." <u>Regauld</u>, 684 F.3d at 173, n.5

Although stale information cannot be considered in the probable cause analysis[4], the First Circuit "has repeatedly refused to assess an affidavit's staleness by counting the number of days between the events described in the affidavit and a warrant's issuance as a merchant would beads on an abacus........[Rather, the Court has] considered various factors, including the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information in assessing the information's ripeness." United States v. Tiem Trinh, 665 F.3d 1, 13(1st Cir. 2011).

Here, the information outlined in the affidavit, especially as it related to 45 Riley Switch Road, was stale to say the least. The last activity related to 45 Riley Switch Road, other than the accused moving from Arizona to Philipston in February 2012 (Affidavit ¶ 22), was the arrival of the accused and Mr. Novicki in early January, 2012 subsequent to the seizure of marijuana is South Dakota. The information related to this event and Mr. McCormack's arrest in South Dakota seems to signal an end to any criminal activity rather than a continuation of a criminal enterprise. This argument is further supported in that despite the extensive investigation and wire intercepts, the only activity outlined after the move to Philipston in February, 2012 is the accused crossing from Mexico into the United States in May, 2012, an event that has no factual underpinnings to support Agent Kelleher's belief that it was for the purpose of drug dealing activities. (Affidavit ¶ 33). Moreover, to the extent Napoleon Alexander's December 4, 2011 arrest can be viewed as related to drug distribution at 45 Riley Switch Road, the apparent quick dissipation of drugs in this time period (the accused arrives back in Philipston on November 27, 2011 and then the accused has to travel to Arizona and negotiate for an additional 1,000 pounds of marijuana in mid-December, 2011) in conjunction with the interception of the marijuana in South Dakota in early January, 2012 along with the absence of any subsequent drug dealing activities, all support the inference that no drugs would be found at the residence in August 2012. Therefore, the information relating to 45 Riley Switch Road was stale and did not support probable cause for the search warrant as it did not provide probable cause to believe that the evidence sought was still there as opposed to some earlier time. See, Jeanette, 533 F. 3d at 654-55; See also, United States v. Viegas, 639 F. 2d 42 (1st Cir 1981).

---

[4] Sgro v. United States, 287 U.S. 206 (1932)

4.   <u>Good Faith</u>

The sanction of exclusion of evidence is inapplicable to evidence seized pursuant to a search warrant obtained in an objectively reasonable manner from a neutral magistrate. <u>United State v. </u>Leon, 468 U.S. 897, 921 (1984).  The exclusionary rule is still warranted, however, where the supporting affidavits are so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable or where the magistrate is misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth.  Id.  at 923; <u>United States v. Zayes Diaz</u>, 95 F.3d 105 (1st Cir. 1996).  Here, the accused submits that the warrant application was so lacking in probable cause to search 45 Riley Switch Road as to render the existence of a belief to authorizing the search of that residence entirely unreasonable.  In addition, any claim of good faith is undercut where the magistrate was misled by the material misrepresentation and omissions in the affidavit submitted in support of the search warrant.  The government bears the burden of showing others acted in objective good faith.  <u>See</u>, <u>United States v. Brunette</u>, 256 F.3d 14, 17 (1st Cir. 2001).  Here, given the paucity of information related to 45 Riley Switch Road prior to January, 2012, and the absence of any drug/criminal activity involving 45 Riley Switch Road during the seven months between January, 2012 and the August, 2012 execution of the search warrant made it entirely unreasonable to believe probable cause existed for the search of 45 Riley Switch Road in August, 2012.  Also, the material misrepresentation and omissions in the affidavit should vitiate any claim of good faith and suppression of the evidence as warranted.

WHEREFORE, the accused respectfully requests that this Court grant his motion and suppress any and all evidence obtained on August 7, 2012 pursuant to a search warrant issued on August 6, 2012.  Further, the accused respectfully requests that this Court schedule a hearing pursuant to <u>Frank v. Delaware.</u>

Respectfully submitted,

John Kosta,
By His Attorney

DATE:         April 16, 2013                    /S/Paul J. Garrity_____
                                                Paul J. Garrity
                                                Bar No. 555976
                                                14 Londonderry Road
                                                Londonderry, NH  03053
                                                603-434-4106

CERTIFICATE OF SERVICE

I, Paul J. Garrity, do hereby certify that on this 16th day of April, 2013, a copy of the within was e filed to
the United States Attorney's Office and mailed, postage prepaid, to  John Kosta.

                                                /S/Paul J. Garrity_____