

**U.S. Department of Justice**

*Carmen M. Ortiz*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

March 10, 2014

Michael H. Kelly
366 Broadway
Everett, MA 02149
Counsel to John Kosta

> Re:   United States v. John Kosta
>        Criminal No. 12-10226-DJC

Dear Counsel:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, John Kosta ("Defendant"), in the above-referenced case. The Agreement is as follows:

1.   Change of Plea

At the earliest practicable date, Defendant shall plead guilty to all counts in which he is named in the above-referenced Superseding Indictment: Count One, in as much as it charges the lesser included offense of conspiracy to possess with intent to distribute and to distribute marijuana, in violation of 21 U.S.C. §846; Counts Two and Four, possession with intent to distribute marijuana, in violation of 21 U.S.C. §841; and Count Three, conspiracy to launder money, in violation of 18 U.S.C. §1956(h). Defendant expressly and unequivocally admits that he committed the crimes charged in Counts One through Four of the Superseding Indictment, did so knowingly and intentionally, and is in fact guilty of those offenses.

The U.S. Attorney agrees to dismiss Counts Five and Six of the Superseding Indictment following the imposition of sentence at the sentencing hearing. Additionally, the U.S. Attorney agrees not to file an Information pursuant to 21 U.S.C. §851 in this matter.

2.   Penalties

Defendant faces the following maximum penalties on each of Counts One, Two and Four of the Superseding Indictment: (a) incarceration for a period of up to 20 years; (b) supervised

release for a period of at least three years, up to life; (c) a fine of up to $1 million; (d) a mandatory special assessment of $100; and (e) forfeiture to the extent charged in the Superseding Indictment.

Defendant faces the following maximum penalties on Count Three of the Superseding Indictment: (a) incarceration for a period of up to 20 years; (b) supervised release for a period of up to three years; (c) a fine of up to $500,000, or twice the value of the property involved in the transaction, whichever is greater; (d) a mandatory special assessment of $100; and (e) forfeiture to the extent charged in the Superseding Indictment.

Defendant also recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which Defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including defense counsel and the District Court, can predict to a certainty the effect of this conviction on Defendant's immigration status. Defendant nevertheless affirms his decision to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is Defendant's automatic removal from the United States.

### 3. Fed. R. Crim. P. 11(c)(1)(C) Plea

This plea agreement is made pursuant to Fed. R. Crim. P. 11(c)(1)(C), and Defendant's guilty plea will be tendered pursuant to that provision. In accordance with Rule 11(c)(1)(C), if the District Court ("Court") accepts this Agreement, the Court must include the agreed disposition in the judgment. If the Court rejects any aspect of this Agreement, the U.S. Attorney may deem the Agreement null and void. Defendant expressly understands that he may not withdraw his plea of guilty unless the Court rejects this Agreement under Fed. R. Crim. P. 11(c)(5).

### 4. Sentencing Guidelines

The U.S. Attorney agrees to take the following positions at sentencing under the United States Sentencing Guidelines ("USSG" or "Guidelines"):

The U.S. Attorney will take the position with respect to the application of the USSG that:

    (i)    in accordance with USSG §2D1.1(c)(4), Defendant's base offense level is 32, because Defendant is responsible for at least 1,000 but less than 3,000 kilograms of marijuana, which quantity represents the total amount involved in Defendant's relevant criminal conduct that is known to the U.S. Attorney and provable at sentencing;

(ii)     in accordance with USSG §2D1.1(b)(1), Defendant's base offense level is increased by two levels, because Defendant possessed a firearm;

(iii)    in accordance with USSG §3B1.1(b), Defendant's offense level is increased by three levels, because Defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive; and

(iv)    in accordance with USSG §3E1.1, based on Defendant's prompt acceptance of personal responsibility for the offenses of conviction in this case, the adjusted offense level is reduced by three.

Defendant reserves the right to oppose the U.S. Attorney's position concerning the applicable drug weight and USSG sentencing enhancements.

The U.S. Attorney's agreement that the disposition set forth below is appropriate in this case is based, in part, on Defendant's prompt acceptance of personal responsibility for the offenses of conviction in this case.

The U.S. Attorney may, at her sole option, be released from her commitments under this Agreement, including, but not limited to, her agreement that Paragraph 5 constitutes the appropriate disposition of this case, if at any time between Defendant's execution of this Agreement and sentencing, Defendant:

(a)    Fails to admit a complete factual basis for the plea;

(b)    Fails to truthfully admit Defendant's conduct in the offenses of conviction;

(c)    Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under USSG §1B1.3;

(d)    Fails to provide truthful information about Defendant's financial status;

(e)    Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under USSG §1B1.3;

(f)    Engages in acts that form a basis for finding that Defendant has obstructed or impeded the administration of justice under USSG §3C1.1;

(g)    Intentionally fails to appear in Court or violates any condition of release;

(h)    Commits a crime;

3

    (i)  Transfers any asset protected under any provision of this Agreement; or

    (j)  Attempts to withdraw Defendant's guilty plea.

  Nothing in this Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

  5.  Agreed Disposition

  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the U.S. Attorney and Defendant agree that the following is a reasonable and appropriate disposition of this case:

    (a)  incarceration for a term of 120 months;

    (b)  a fine as calculated by the Court at sentencing, excluding departures, unless the Court finds that Defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay a fine;

    (c)  36 months of supervised release;

    (d)  a mandatory special assessment of $400; and

    (e)  forfeiture as set forth in Paragraph 10.

  6.  Payment of Mandatory Special Assessment

  Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

  7.  Protection of Assets for Payment of Restitution, Forfeiture and Fine

  Defendant agrees not to transfer, or authorize the transfer of, any asset that has been restrained by Order of the Court in this case or any asset, whether or not restrained, that Defendant has agreed to forfeit pursuant to this Agreement.

  Defendant agrees not to transfer, or authorize the transfer of any other asset in which Defendant has an interest without prior express written consent of the U.S. Attorney, except for:

    (a)  Assets subject to superior, secured interests of innocent third parties, in which Defendant has an equity interest of less than $10,000;

     (b)     Ordinary living expenses necessary to house, clothe, transport and feed Defendant and those to whom Defendant owes a legal duty of support, so long as such assets do not exceed $5,000 per month; and

     (c)     Attorney's fees incurred in connection with this criminal case.

This prohibition shall be effective as of the date of Defendant's execution of this Agreement and continue until the fine, forfeiture and restitution ordered by the Court at sentencing are satisfied in full.

Defendant further agrees that Defendant will, prior to sentencing, complete truthfully and accurately the sworn financial statement enclosed with this Agreement.

8.     Waiver of Right to Appeal and to Bring Future Challenge

     (a)     Defendant has conferred with his attorney and understands that he has the right to challenge his conviction in the United States Court of Appeals for the First Circuit ("direct appeal"). Defendant also understands that, in some circumstances, Defendant may be able to challenge his conviction in a future proceeding (collateral or otherwise), such as pursuant to a motion under 28 U.S.C. §2255, 28 U.S.C. §2241 or 18 U.S.C. §3582(c). Defendant waives any right to challenge Defendant's conviction on direct appeal or in any future proceeding (collateral or otherwise).

     (b)     Defendant has conferred with his attorney and understands that defendants ordinarily have a right to challenge in a direct appeal their sentences (including any orders relating to supervised release, fines, forfeiture, and restitution) and may sometimes challenge their sentences (including any orders relating to supervised release, fines, forfeiture, and restitution) in a future proceeding (collateral or otherwise) such as pursuant to 28 U.S.C. §2255, 28 U.S.C. §2241 or 18 U.S.C. §3582. The rights that are ordinarily available to a defendant are limited when a defendant enters into a Rule 11(c)(1)(C) agreement. In this case, Defendant waives any rights Defendant may have to challenge the agreed-upon sentence (including any agreement relating to supervised release, fines, forfeiture, and restitution) on direct appeal and in a future proceeding (collateral or otherwise), such as pursuant to 28 U.S.C. §2255 and 28 U.S.C. §2241. Defendant also waives any right Defendant may have under 18 U.S.C. §3582 to ask the Court to modify the sentence, even if the USSG are later amended in a way that appears favorable to Defendant. Likewise, Defendant agrees not to seek to be resentenced with the benefit of any change to Defendant's Criminal History Category that existed at the time of Defendant's original

5

sentencing. Defendant also agrees not to challenge the sentence in an appeal or future proceeding (collateral or otherwise) even if the Court rejects one or more positions advocated by any party at sentencing. In sum, Defendant understands and agrees that in entering into this Agreement, the parties intend that Defendant will receive the benefits of the Agreement and that the sentence will be final.

(c)     The U.S. Attorney agrees that she will not appeal the imposition by the Court of the sentence agreed to by the parties as set out in Paragraph 5, even if the Court rejects one or more positions advocated by either party at sentencing.

(d)     Notwithstanding the previous subparagraphs, Defendant reserves the right to claim that Defendant's lawyer was ineffective in connection with the negotiation of this plea agreement or the entry of the guilty plea.

9.     Probation Department Not Bound By Agreement

The sentencing disposition agreed upon by the parties and their respective calculations under the USSG are not binding upon the United States Probation Office.

10.     Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

a.     $5,333.78 in United States currency seized from Eastern Bank account number ending in 1698;

b.     $26,337.09 in United States currency seized from TD Bank account number ending in 0064;

c.     $4,525.23 in United States currency seized from Sovereign Bank account number ending in 1678;

d.     $14,412.84 in United States currency seized from Peoples United Bank account number ending in 4305;

Case 1:12-cr-10226-DJC   Document 511   Filed 03/14/14   Page 7 of 14

e.    one white 2010 Nissan Maxima, bearing vehicle identification number
      1N4AASAP7AC803341 and Massachusetts registration number 668-
      TH4;

f.    one grey 2008 Chevrolet Silverado, bearing vehicle identification
      number 1GCHK23K08F184998 and Massachusetts registration
      number 471-BS9;

g.    one red 2008 Pontiac Grand Prix, bearing vehicle identification
      number 2G2WC58C981133275 and Arizona registration number
      ARL3893;

h.    the real property located at 181 Krainewood Drive, Moultonboro, New
      Hampshire, Lot 33, including all buildings, improvements,  and
      appurtenances thereon, more particularly described in a deed recorded
      at Book 2973, Pages 910-911, at the Carroll County Registry of
      Deeds;

i.    the real property located at 1 Barre Road, Phillipston, Massachusetts,
      including all buildings, improvements, and appurtenances thereon,
      more particularly described in a deed recorded at Book 49088, Pages
      255-258, at the Worcester District Registry of Deeds;

j.    the real property located at 390 Highland A venue, Phillipston,
      Massachusetts, including all buildings, improvements, and
      appurtenances thereon, more particularly described in a deed recorded
      at Book 49088, Pages 259-262, at the Worcester District Registry of
      Deeds;

k.    the real property located at parcel number 004788377, at Spring Street
      in Petersham, Massachusetts, including all buildings, improvements,
      and appurtenances thereon, more particularly described in a deed
      recorded at Book 49088, Pages 263-266, at the Worcester District
      Registry of Deeds;

l.    the real property located at parcel number 004788374, Lot 2, at
      Wellington Road in Templeton, Massachusetts, including all
      buildings, improvements, and appurtenances thereon, more
      particularly described in a deed recorded at Book 49088, Pages 267-
      270, at the Worcester District Registry of Deeds;

m.    real property located at 45 Riley Switch Road, Phillipston,
      Massachusetts, including all buildings, improvements, and

7

appurtenances thereon, more particularly described in a deed recorded
at Book 35664, Pages 42-43, at the Worcester District Registry of
Deeds;

n.     real property located at 100 Summit Street, Orange, Massachusetts,
       including all buildings, improvements, and appurtenances thereon,
       more particularly described in a deed recorded at Book 5945, Pages
       129-130, at the Franklin District Registry of Deeds;

o.     one Glock handgun, bearing serial number PXG371;

p.     one Sturm Ruger handgun, bearing serial number 660-14189;

q.     one Iver Johnson Arms handgun, bearing serial number 73485;

r.     one Interarms handgun, bearing serial number L6077;

s.     one Sturm Ruger revolver, bearing serial number 174-78641;

t.     one Arms Company revolver, bearing serial number 14820;

u.     one O.F. Mossberg & Sons, Inc. shotgun, Model 390KA bearing no
       serial number;

v.     one O.F. Mossberg & Sons, Inc. shotgun, Model 183KD, bearing
       serial number 205346;

w.     one Remington shotgun, Model 870, bearing serial number
       D577964N;

x.     one Boito BR7 shotgun, bearing serial number 3052238A;

y.     one New York Arms Co. shotgun, bearing serial number 63861;

z.     one Heckler & Koch Inc. .22 caliber semi-automatic assault rifle,
       bearing serial number HK002360;

aa.    one M&P 15 semi-automatic assault rifle, bearing serial number
       SM28424;

bb.    one M&P 15 semi-automatic assault rifle, bearing serial number
       SN63363;

8

cc.   one M&P 15 semi-automatic assault rifle, bearing serial number
      SM23903;

dd.   one Bushmaster semi-automatic assault rifle, model XM15-E2S,
      bearing serial number BFI437064;

ee.   one Bushmaster semi-automatic assault rifle, Model XM15-E2S,
      bearing serial number BFI615628;

ff.   one Sig Sauer semi-automatic assault rifle, Model 522, bearing serial
      number XA008899;

gg.   one HKP2000SK handgun, bearing serial number 121007455;

hh.   one Glock handgun, Model 19, bearing serial number KVG412;

ii.   one Keltec handgun, Model MR30, bearing serial number W0Z82;

jj.   one Sturm Ruger .357 Magnum revolver, bearing serial number
      17498683;

kk.   one Smith & Wesson .44 Magnum handgun, bearing serial number
      N870328;

ll.   one Smith & Wesson handgun, Model MP-40, bearing serial number
      MRC6307;

mm.   one Smith & Wesson handgun, Model P2000SK, bearing serial
      number 122014590;

nn.   twenty-one rounds of .22 caliber ammunition;

oo.   five rounds of 9 millimeter ammunition;

pp.   fifteen rounds of 9 millimeter hollow point ammunition;

qq.   two hundred rounds of .40 caliber ammunition;

rr.   six rounds of .40 caliber hollow point ammunition;

ss.   eighty-two rounds of .45 caliber ammunition;

tt.   one-hundred ten rounds of .380 caliber ammunition;

9

uu.     forty-four rounds of .380 caliber hollow point ammunition;

vv.     three-hundred eighty-one rounds of 5.56 caliber ammunition;

ww.     ninety-eight rounds of .38 caliber ammunition;

xx.     twenty-seven rounds of .357 caliber ammunition;

yy.     forty-nine rounds of .357 caliber hollow point ammunition;

zz.     fifty-three rounds of .32 caliber ammunition;

aaa.    fourteen rounds of .32 caliber hollow point ammunition;

bbb.    one round of 7.62 caliber ammunition;

ccc.    four-hundred eighteen rounds of .22 caliber rifle ammunition;

ddd.    five 70 millimeter 12 gauge shotgun buckshot shells; and

eee.    ninety-five rounds of .44 magnum ammunition.

Defendant admits that assets (a) – (n) are subject to forfeiture on the grounds that they are property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as a result of one or more of the offenses alleged in Counts One, Two, and Four of the Indictment, are property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses, and/or are property, real or personal, involved in the offense alleged in Count Three of the Indictment, or property traceable to such property. Defendant's agreement to consent to the entry of orders of forfeiture for assets (o) – (eee) is not an admission of ownership of or a possessory interest in those assets.

Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such

title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

Defendant also agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Agreement. Defendant agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with regard to such challenge or review.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets. Without limiting the generality of the foregoing, Defendant hereby specifically waives and releases Defendant's claims to the following, which the United States shall seek to forfeit from Co-Defendant Tamara Kosta:

a. seven lots of real property located in Perry, Maine, including all buildings, improvements, and appurtenances thereon, more particularly described in a deed recorded at Volume 3387, Pages 145-149, at the Washington County (Maine) Registry of Deeds ("the Perry Property"), or if the Perry Property is sold pursuant to an interlocutory sale, then the sales proceeds of the Perry Property;

b. $90,000 in United States currency seized from BBVA Compass Bank safe deposit box;

c. $6,129.20 in United States currency seized from TD Bank account number ending in 5240;

d. $5,584.94 in United States currency seized from Eastern Bank account number ending in 7396; and

e. $5,904.31 in United States currency seized from Bank of America account number ending in 0959.

This waiver of claims specifically excludes the following seized property:

the real property located at 359 Maple Street, Lynn, Massachusetts, Lot 2, including all buildings, improvements, and appurtenances thereon, more particularly described in a

11

deed recorded at Book 18480, Page 171, at the Southern Essex District Registry of Deeds ("the 359 Maple Street Property"),

which the United States has agreed to return to Co-Defendant Tamara Kosta, and as to which Defendant hereby waives any and all claims arising from or relating to the seizure, detention, and return of the property. This waiver of claims also specifically excludes the following property:

the real property located at 325 Water Street, Fitchburg, Massachusetts, including all buildings, improvements, and appurtenances thereon, more particularly described in a deed recorded at Book 7388, Pages 187-190, at the Worcester Northern District Registry of Deeds,

which the United States agreed to release, and as to which the Court issued an Order on March 25, 2013 releasing the restraining order and the *lis pendens* against the real property. Defendant hereby waives any and all claims arising from or relating to the seizure, detention, and return of the property.

## 11.     Information For Presentence Report

Defendant agrees to provide all information requested by the U.S. Probation Office concerning Defendant's assets.

## 12.     Civil Liability

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, Defendant may have incurred or may incur as a result of Defendant's conduct and plea of guilty to the charges specified in Paragraph 1 of this Agreement.

## 13.     Withdrawal of Plea By Defendant or Rejection of Plea by Court

Should Defendant move to withdraw his guilty plea at any time, or should the Court reject the parties' agreed-upon disposition of the case or any other aspect of this Agreement, this Agreement shall be null and void at the option of the U.S. Attorney. In this event, Defendant agrees to waive any defenses based upon the statute of limitations, the constitutional protection against pre-indictment delay, and the Speedy Trial Act with respect to any and all charges that could have been timely brought or pursued as of the date of this Agreement.

## 14.     Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement, has engaged in any of the activities set forth in Paragraph 4(a)-(j), has violated any condition of Defendant's pretrial release, or has committed any crime following Defendant's

execution of this Agreement, the U.S. Attorney may, at her sole option, be released from her commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to her under the law, regardless whether she elects to be released from her commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which otherwise may have been brought against the Defendant and/or have been, or are to be, dismissed pursuant to this Agreement. Defendant recognizes that his breach of an obligation under this Agreement shall not give rise to grounds for withdrawal of Defendant's guilty plea. Defendant further understands that, should he breach any provision of this Agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements that Defendant may make, and any information, materials, documents or objects that Defendant may provide to the government subsequent to this Agreement, without any limitation. In this regard, Defendant hereby waives any defense to any charges that Defendant might otherwise have based upon any statute of limitations, the constitutional protection against pre-indictment delay, or the Speedy Trial Act.

### 15.    Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

### 16.    Complete Agreement

This letter contains the complete and only agreement between the parties relating to the disposition of this case. No promises, representations or agreements have been made other than those set forth in this letter. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral (subject to Paragraph 14, above). This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Leah Foley.

Very truly yours,

CARMEN M. ORTIZ
United States Attorney

By: _____
JAMES D. HERBERT
Deputy Chief, Criminal Division

13

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter, and that I have received no prior offers to resolve this case. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for these offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

John Kosta
Defendant
Date: 3/13/2014

I certify that John Kosta has read this Agreement and that we have discussed its meaning. I believe he understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly. I also certify that the U.S. Attorney has not extended any other offers to resolve this matter.

Michael H. Kelly
Attorney for Defendant
Date: 3/13/2014

14