UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 12-10226-DJC |
| | ) | |
| 1. JOHN KOSTA | ) | |
| a/k/a "Costa Mihalakakis," | ) | |
| Defendant. | ) | |
| _____ | ) | |

### UNITED STATES' MEMORANDUM IN OPPOSITION TO WELLS FARGO BANK, N.A.'S MOTION TO SET ASIDE THE JANUARY 30, 2015 FINAL ORDER OF FORFEITURE (DOCKET NO. 657) AND MOTION TO STIKE CLAIM (DOCKET NO. 659)

The United States of America, by its attorney, Carmen M. Ortiz, United States Attorney

for the District of Massachusetts, respectfully submits this Memorandum in Opposition to Wells

Fargo Bank, N.A. as trustee for Banc of America Funding 2005-B Trust's ("Wells Fargo")

Motion to Set Aside the January 30, 2015 Final Order of Forfeiture (Docket No. 657, hereafter

the "Motion to Set Aside the FOF").  In its Motion to Set Aside the FOF, Wells Fargo requests

this court to "set aside" or "void" the Final Order of Forfeiture entered by this Court because it

claims that the United States did not provide adequate notice to Wells Fargo regarding the Final

Order of Forfeiture.  *See* Motion to Set Aside the FOF at 1-2.  As discussed *infra*, the requested

relief is not appropriate because (1) Wells Fargo lacks standing in this case; (2) Wells Fargo, as

of the filing of its Motion to Set Aside the FOF, had not filed a valid claim and the time in which

to do so has lapsed; and (3) adequate notice has been provided to all interested parties, including

to Wells Fargo.  Accordingly, as detailed below, the United States respectfully requests that

Wells Fargo's Motion to Set Aside the FOF be denied and that this Court strike Wells Fargo's third-party claim.

## FACTUAL BACKGROUND

On August 6, 2012, this Court issued *Lis Pendens* against various properties, including the real property located at 45 Riley Switch Road, Phillipston, Massachusetts, including all buildings, improvements, and appurtenances thereon, more particularly described in a deed recorded at Book 35664, Pages 42-43, at the Worcester District Registry of Deeds (the "Real Property"). The *Lis Pendens* provided notice that the Real Property, among other properties, was subject to forfeiture to the United States upon the conviction of one or more of the defendants in this case. On August 8, 2012, the United States recorded the *Lis Pendens* for the Real Property with the Worcester District Registry of Deeds.

On September 27, 2012, a federal grand jury sitting in the District of Massachusetts returned a six-count Superseding Indictment charging defendant John Kosta a/k/a "Costa Mihalakakis" (the "Defendant"), and others, with Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana, in violation of 21 U.S.C. § 846 (Count One); Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts Two and Four); Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h) (Count Three); Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Five); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Six). The Superseding Indictment contained a drug forfeiture allegation, pursuant to 21 U.S.C. § 853, which provided notice that the United States sought the forfeiture, upon conviction of the Defendant of any offense alleged in Counts One, Two, Four, Five, and Six of the Superseding Indictment, (jointly and severally as to Count One) of any and all property constituting, or derived from, any proceeds the Defendant obtained,

directly or indirectly, as a result of such offenses, and/or any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses. The drug forfeiture allegation further listed numerous specific assets for forfeiture. *See* Docket No. 198, Superseding Indictment at 10-14. The Superseding Indictment also contained a money laundering forfeiture allegation, pursuant to 18 U.S.C. § 982(a)(1), which provided notice that the United States sought the forfeiture, upon conviction of the Defendant of the offense alleged in Count Three of the Superseding Indictment, jointly and severally, of any property real or personal, involved in the offense, and any property traceable to such property. The money laundering forfeiture allegation further listed numerous specific assets for forfeiture. *Id.* at 15-17. The drug and money laundering forfeiture allegations of the Superseding Indictment further provided that, if any of the above-described forfeitable property, as a result of any act or omission by the Defendant, (a) cannot be located upon the exercise of due diligence;  (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States is entitled to seek forfeiture of any other property of the Defendant, up to the value of such assets, pursuant to 21 U.S.C. § 853(p). The drug and money laundering forfeiture allegations also listed specific substitute assets for forfeiture. *Id.* at 13-14, 16-17.

On March 13, 2014, at a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the Defendant pled guilty to Counts One through Four of the Superseding Indictment pursuant to a written plea agreement that he signed on March 13, 2014. *See* Docket No. 511. In Section 10 of the plea agreement, the Defendant agreed to the forfeiture of numerous assets including the Real Property. On July 21, 2014, a sentencing hearing was held whereby this

Court sentenced the Defendant to 120 months incarceration, to be followed by a term of 3 years supervised release, and ordered the Defendant to pay a special assessment of $400.  In addition, this Court ordered the Defendant to forfeit various properties (collectively, hereafter referred to as "Properties"), pursuant to the terms of the Preliminary Order of Forfeiture.  *See* Docket No. 545.

On July 22, 2014, this Court issued a Preliminary Order of Forfeiture against the Properties, pursuant to 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853, and Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure.  *See* Docket No. 545-1.  Notice of the Preliminary Order of Forfeiture was sent to all interested parties and published on the government website www.forfeiture.gov for thirty (30) consecutive calendar days, beginning on August 1, 2014 and ending on August 30, 2014.  *See* Docket Nos. 565 – 568, 586, and 596.  The deadline for any interested parties to file a claim based on notice through publication was October 29, 2014.  Additionally, the United States served a copy of the Preliminary Order of Forfeiture to the Worcester District Registry of Deeds, which was subsequently recorded on August 15, 2014 (Book: 52682, Page: 330).  *See* Docket No. 603.

Direct notice of the forfeiture of the Real Property was sent to various interested parties, including Bank of America, which at the time the *Lis Pendens* was issued, was the identified as a potentially interested party because it serviced two liens associated with the Real Property.  *See* Docket No. 650-12.  Accordingly, on August 14, 2014, BOA received direct notice of the Preliminary Order of Forfeiture.  *See* Docket No. 650-4, Exhibit 3.  Prior to submitting notice to Bank of America, the United States performed a search on the Worcester County Registry of Deeds and MERS.  The searches identified Bank of America as the current servicer on the

Loans.[1]   *See* Docket Nos. 650-5 – 650-7.   The following searches were conducted: 1) a search was conducted entering the 45 Riley Switch Road, Phillipston, MA address; 2) a search was conducted entering the Defendant's last name, "Kosta;" and 3) a search was conducted entering the name "Mihalakakis."   Search #1 yielded ownership information for the Real Property.   *See* Exhibit 4.   Search #1, however, did not yield any information regarding any assignments of the Loans to a different servicing provider in 2013.   *Id.*   Search #2 did not yield any information regarding the Real Property.   *See* Exhibit 5.   Search #3 yielded information regarding the Real Property, in addition to information regarding other properties.   *See* Exhibit 6.   However, search #3 did not yield any assignments of the Loans to a different servicing provider in 2013.   *Id.*

On October 6, 2014, Bank of America filed a Third Party Petition of Interest in the Real Property, identifying an outstanding mortgage lien totaling $19,920.03.   *See* Docket Number 597.   On December 19, 2014, the United States entered into an Expedited Settlement Agreement with Bank of America.   *See* Docket No. 650-8.

On January 30, 2015, this Court issued a Final Order of Forfeiture against the Properties, pursuant to 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853, and Rule 32.2 of the Federal Rules of Criminal Procedure.   *See* Docket No. 650-9.   The Final Order of Forfeiture explicitly stated that notice of the Preliminary Order of Forfeiture was sent to all interested parties and published on the government website www.forfeiture.gov for thirty (30) consecutive calendar days, beginning on August 1, 2014 and ending on August 30, 2014.   *Id.* at 7.   The Final Order of Forfeiture further noted that, with the exception of the claim filed by Bank of America, no other claims of interest in the Properties, which included the Real Property, had been filed with the Court, and

---

[1] As a matter of course, the United States conducts research, including performing various searches on the applicable registry of deeds websites, to identify potentially interested parties.

the time within which to do so had expired.  *Id.*  The Final Order of Forfeiture also granted the
United States the following:

> 2.     The United States of America is now entitled to the forfeiture of all right, title or
>         interest in the Properties, and they are hereby forfeited to the United States of
>         America pursuant to 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853 and Rule 32.2(c) of
>         the Federal Rules of Criminal Procedure.
>
> 3.     **<u>All other parties having any right, title or interest in the Properties are
>         hereby held in default</u>**.
>
> 4.     The United States Marshals Service is hereby authorized to dispose of the
>         Properties in accordance with applicable law.

*Id.* at 7–8 (Emphasis added).  The United States served a copy of the Final Order of Forfeiture on
February 13, 2015, to the Worcester District Registry of Deeds, which was subsequently recorded
on March 23, 2015 (Book: 53498, Page 206).  *See* Docket No. 631.  Upon receiving the Final
Order of Forfeiture, the United States Marshals Service immediately attempted to dispose of the
Properties, including the Real Property.  The property was immediately placed on the market, and
a potential buyer presented an offer to purchase the property.

In late August 2015, the United States was notified that the closing was not able to
proceed because a Bank of America refused to consent to relinquish one of the liens on the
property.  Bank of America stated for the first time that one of the loans had been assigned to
Ocwen Loan Serving LLC ("Ocwen"), and the United States was directed to resolve the matter
with Ocwen.  The United States promptly contacted Ocwen, in addition to counsel for Bank of
America, attempting to verify the assignment of the Mortgage Loan to Ocwen.  Initially, Counsel
for Bank of America was unaware that the Mortgage Loan had been assigned to Ocwen but later
confirmed that the Mortgage Loan had been assigned in 2013.[2]  Immediately thereafter, the

---

[2] Based on the United States' review of the Assignment dated March 11, 2013 (Book:
50566, Page: 286), the Mortgage Loan was assigned to "Wells Fargo Bank, N.A., as Trustee for

United States contacted Ocwen to verify the assignment of the Mortgage Loan, and after

receiving such information, Ocwen directed the United States to provide written documentation

regarding the forfeiture proceeding.  On August 27, 2015, the United States sent a letter to

Ocwen, attaching relevant forfeiture documents.  *See* Docket No. 650-11.  Ocwen also informed

the United States that it had recently taken foreclosure action against the property.[3]

After this Court issued the Final Order of Forfeiture, on March 12, 2015, Ocwen filed a

Corporate Assignment of Mortgage with the Worcester District Registry of Deeds (Book: 50566,

Page: 137), which, for the first time, publically identified Ocwen as the current servicer of the

---

the Certificate Holders of Banc of America Funding Corporation." *See* Exhibit 12.  The
Assignment also provided an address for Bank of America Corporation.  As standard practice,
the United States has sent all legal notices to Bank of America's legal department located at 100
Federal Street, Boston, Massachusetts.  During the course of this case, Bank of America has
accepted notice of all forfeiture actions.  *See* Exhibits 3 and 11.  Moreover, the Assignment
incorrectly identified the property as being located in the "Township of Templeton" – not
"Phillipston" (*see* Exhibit 12); this error explains why the Assignment does not appear when a
search is conducted using the proper legal address for the property.  Furthermore, Ocwen is not
identified in the Assignment.  *Id.*  Accordingly, the United States – nor the general public – could
have been aware of the existence of the Assignment without first having the exact book and page
number of the Assignment.  Moreover, even if the United States had access to this information –
which it did not – the Assignment would not have provided notice that Ocwen was the current
servicer of the loan; the United States, therefore, would have continued to send notice to Bank of
America as it has during the tenure of this case.

[3] *See United States v. Weeks*, 2001 WL 1688891, *1 (D. Mass. Dec. 7, 2001), citing
*United States v. Phillips*, 185 F. 3d 183, 188 (4th Cir. 1999) (third party cannot commence
foreclosure action to recover lienholder's interest in forfeited real property even though
defendant has stopped paying mortgage; once the property is forfeited, it belongs to the United
States under the relation back doctrine, and any attempt at foreclosure is barred by 18 U.S.C.
§ 853(k)(2)); *United States v. West*, 2007 WL 1100437, * 1 (E.D. Tenn. Apr. 10, 2007)
(lienholder's right under state law to foreclose on the property is not a property interest that
trumps the United States' right to forfeit the property under federal law; the only right exempted
from forfeiture are those protected by 18 U.S.C. § 853(n); 18 U.S.C. § 853(k) bars the lienholder
from commencing a state foreclosure); *United States v. Cheng*, 2006 WL 1133295, *1 (N.D.N.Y.
Apr. 26, 2006) (denying bank's motion for permission to foreclose on forfeited property; bank's
only avenue of relief is in the ancillary proceedings).

Mortgage Loan.[4]  *See* Docket No. 650-15.  The document stated the following: "The purpose of this assignment of mortgage is to correct the assignee verbiage on the assignment recorded on March 11 [SIC], 2013, on Book: 50566, Page: 286."  *Id.*

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) provides parties with a limited avenue for seeking relief from final judgments.  *Gonzalez v. Crosby*, 545 U.S. 524, 528-29 (2005).  Rule 60(b) allows parties to seek relief from final judgments because "a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010).  "Courts do not disturb final judgments unless the moving party demonstrates the existence of extraordinary circumstances."  *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 660 (1st Cir. 1990); *see also, Davila-Alvarez v. Escuela de Medicina Universidad Cent. Del Caribe*, 257 F.3d 58, 67 (1st Cir. 2001) (Supreme Court has interpreted Rule 60(b)(6) motions as requiring a showing of "extraordinary circumstances suggesting that the party is faultless in the delay") (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Ltd. P'ship*, 507 U.S. 380, 393 (1993).  In the context of Rule 60(b)(4) and (6), a motion "may be granted only when the movant can show 'exceptional circumstances' that would result in 'an extreme and unexpected hardship.'"  *United States v. Billion Int'l Trading, Inc.*, 2012 WL 1156356 at 1 (N.D. Ga. 2012), citing Fed.R.Civ.P. 60(c)(1).  Furthermore, Rule 60 motions "must be made within a reasonable time."  Fed.R.Civ.P. 60(c)(1).  To balance the need for final judgments and resolving litigation on the merits, courts

---

[4] The 2013 Assignment was not available or accessible to the United States until the filing of the Corporate Assignment of Mortgage, which identified the book and page information of the 2013 Assignment.

considering these motions take four factors into consideration: "(1) the motion's timeliness; (2) whether exceptional circumstances justify extraordinary relief; (3) whether the movant can show a potentially meritorious claim or defense, which, if proven, could bring her success at trial; and (4) the likelihood of unfair prejudice to the opposing party." *Bouret-Echevarria v. Caribbean Aviator Maintenance Corp.,* 784 F.3d 37, 43 (1st Cir. 2015).

## ARGUMENT

### I.     Wells Fargo Has Failed to Demonstrate that the Final Order of Forfeiture Should Be Set Aside Pursuant to Rule 60.

A.   Wells Fargo's Motion To Set Aside the FOF is Untimely.

Wells Fargo's Motion to Set Aside the FOF is untimely.  Motions brought pursuant to Rule 60(b)(4) and (6) are subject to a "reasonable" time limit.  The determination of what constitutes "reasonable" is determined on a case-by-case basis and requires a district court to determine when the moving party could have filed a Rule 60 motion.  *See United States v. Baus*, 834 F.2d 1114, 1121 (1st Cir. 1987); *Cotto v. United States*, 993 F.2d 274, 280 (1st Cir. 1993) (court holding that a sixteen month delay was unreasonable and finding that appellants had "no valid excuse for having dawdled an additional fourteen months before alerting the district court to the changed circumstances").  The relevant considerations also include whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner.  *See In re Pacific Far East Lines Inc.*, 889 F.2d 242 (9th Cir. 1989).

Here, Wells Fargo's Motion to Set Aside the FOF was filed almost ten months after the issuance of the Final Order of Forfeiture, and Wells Fargo does not attempt to explain its delay in filing the motion.  Wells Fargo was on public notice as early as August 6, 2012, that the Real Property was subject to forfeiture.  It failed to submit a valid, timely claim, the procedures of which were outlined in the Preliminary Order of Forfeiture issued by this Court.  Moreover,

Wells Fargo was on notice as of January 30, 2015, that a Final Order of Forfeiture had been entered by this Court.  Assuming that Wells Fargo did not have access to the Final Order of Forfeiture via the Registry of Deeds – which it did – Wells Fargo received direct notice on August 27, 2015 of the Final Order of Forfeiture and the Preliminary Order of Forfeiture, which was sent to Ocwen's counsel.  *See* Docket No.650-11.  Even with knowledge of the existence of the final order as of August 27, 2015, Wells Fargo did not file a motion to set aside the Final Order of Forfeiture nor a claim.  Their Motion to Set Aside the FOF was only filed in response to the United States' Motion for an Amended Final Order of Forfeiture and Motion for Quiet Title. Wells Fargo's motion is devoid of a reasonable basis justifying its failure to take this type of action sooner.

Moreover, Wells Fargo's delay has prejudiced the United States and is wholly unreasonable.  In particular, Wells Fargo's delay in filing a timely claim and the delay in filing its Motion to Set Aside the FOF has had an adverse impact on the value of the Real Property. Instead of working collaboratively with the United States, Wells Fargo has disrupted the sale of the Real Property, which consequently has caused a decrease in the total amount of funds potential available from the sale of the property and has jeopardized the sale generally. Additionally, reversal of the Final Order of Forfeiture would be prejudicial at this time because it would open the floodgates in other cases – standing for the proposition that anyone – even non-third parties – could intervene at this late stage and void a Final Order of Forfeiture.  This would, in turn, undermine the enforceability of a Final Order of Forfeiture.  Furthermore, voiding a Final Order of Forfeiture at this late juncture is inconsistent with the principal of finality of judgments, thus, undermining the authority – clear title to forfeited property - granted to the United States pursuant to these Orders.

Because Wells Fargo's motion broadly requests that the entire Final Order of Forfeiture be set aside, if Wells Fargo's motion is allowed, it will also impact the forfeiture of all of the Properties included in the Final Order of Forfeiture, most of which have already been forfeited and/or destroyed, and other Properties which the United States Marshals Service is activity trying to sell.  Wells Fargo has not provided a sufficient basis justifying its overbroad, far reaching request.  Based on these circumstances, Wells Fargo's motion pursuant to Rule 60 is untimely and unreasonable.

B.   <u>Wells Fargo Has Not Met Its Burden of Establishing Exceptional Circumstances Justifying Relief from the Final Order of Forfeiture.</u>

Relief under Rule 60 requires that exceptional circumstances justify extraordinary relief. *Torre v. Continental Ins. Co.*, 15 F.3d 12, 14-15 (1st Cir. 1994).  Wells Fargo has failed to establish "exceptional circumstances" which justifies the type of relief requested.  Wells Fargo argues that it did not receive adequate due process prior to the issuance of the Final Order of Forfeiture.  This argument lacks merit.  Wells Fargo was afforded adequate due process.

Pursuant to 18 U.S.C. § 982, 21 U.S.C. § 853, and Criminal Rules of Procedure 32.2(b)(6), there are two ways in which the United States is required to provide notice of a Preliminary Order of Forfeiture: (a) direct notice or (2) notice by publication.   Rule 32.2(b)(6)(A) states the following: "If the court orders the forfeiture of specific property, the government must publish notice of the order and send notice of the order and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding."  The Preliminary Order of Forfeiture also stated the following:

> Upon the issuance of a Preliminary Order of Forfeiture and pursuant to 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853, the United States shall publish, for thirty (30) consecutive calendar days on the government forfeiture website www.forfeiture.gov, notice of the Preliminary Order of Forfeiture, notice of the

United States' intent to dispose of the [Real Property], and notice that any person, other than the Defendant, having or claiming a legal interest in the [Real Property] must file a petition with the Court within sixty (60) days after the first day of publication on the government forfeiture website or within thirty (30) days after receipt of actual notice, whichever is earlier.

Docket No. 545- at 6-7.

The United States provided direct notice to all persons who reasonably appeared to be potential claimants with standing to contest the forfeiture of the Real Property. The United States sent notice to the Defendants and to Bank of America. The question of whether the United States provided sufficient notice before effectuating a forfeiture requires a case-specific analysis "that hinges, in the first instance, on the information available to the putative claimant." *United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 22 (2006). "A putative claimant's actual knowledge of a forfeiture proceeding can defeat a subsequent due process challenge, even if the government botches its obligation to furnish him with notice." *Id.* In cases involving the absence of actual notice, the inquiry is based on a totality of the circumstances, whether the United States' attempt to provide notice is "reasonably designed" to give notice of the forfeiture to interested parties. *Id.* If a potential claimant's name or location is unknown or unavailable, notice by publication can serve as a satisfactory method of notice. *See United States v. Approximately 2,538.85 Shares of Stock*, 988 F.2d 1281, 1284 n. 4 (1ˢᵗ Cir. 1993). The burden on the United States is not onerous; "the United States is not required to engage in a sprawling, open-ended investigation to identify and track down unidentified, but potentially interested, parties." *United States v. One Star Class Sloop Sailboat*, 458 F.3d at 24.

Here, Wells Fargo argues that the United States failed to "serve" it with notice of the Preliminary Order of Forfeiture by publication. Wells Fargo's argument that the United States had an obligation to "serve" it with notice of publication lacks merit. Pursuant to Pursuant to 18

U.S.C. § 982, 21 U.S.C. § 853, and Criminal Rules of Procedure 32.2(b)(6), notice by publication does not require the United States to do anything other than publish notification of the Preliminary Order of Forfeiture on the government website.  The United States complied with its statutory obligation by publishing notice of the Preliminary Order of Forfeiture for 30 consecutive days from August 1, 2014 to August 30, 2014, and anyone (*i.e.* the general public) receiving notice by publication was required to file a claim no later than October 29, 2014.

Wells Fargo also argues that the United States failed to serve Wells Fargo with direct notice despite informing this Court in its Motion for Final Order of Forfeiture that the United States had sent direct notice to all potentially interested parties.  This argument also lacks merit. The United States complied with its statutory obligations by providing direct notice to all interested parties that it knew, or reasonably should have known, existed before the expiration of time to file a timely claim – which was prior to October 29, 2014.  As of October 29, 2014, the United States had performed several internet searches on the Worcester Registry of Deeds, attempting to identify all potentially interested parties discussed *supra*.  All of these searches yielded information showing that GreenPoint Mortgage Funding, Inc. was the appropriate interested party.

Additionally, based on the Sales and Servicing Agreement dated March 6, 2017, between GreenPoint Mortgage Funding, Inc. ("GreenPoint") and EMC Mortgage Corporation and MERS, Bank of America was designated as having full power and authority to act on behalf of GreenPoint Mortgage.  *See* Exhibit 1[5].  Additionally, the Mortgage recorded on the Registry of

---

[5] Section 4.01 of Article IV provides that "The Servicer, as independent contract servicer, shall service and administer the Revolving Credit Loans in accordance with this Agreement, all applicable law and with Accepted Servicing Practices, and shall have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration which the Servicer may deem necessary or desirable and consistent with the terms

Deeds identified GreenPoint Mortgage Funding, Inc. as the appropriate potentially interested party relating to this particular lien.  Accordingly, because the Sales and Serving Agreement identified Bank of America as the "trustee" for GreenPoint, direct notice was sent to Bank of America's legal department, which is located in Boston, Massachusetts.  Although Wells Fargo argues that direct notice should not have been sent to Boston but should have been sent instead to a California address, Wells Fargo is incorrect.  As a matter of standard practice, the United States sends all legal correspondence to Bank of America's Boston address because Bank of America's legal department is located in Boston, Massachusetts.  Accordingly, the United States provided adequate direct notice to GreenPoint.

Wells Fargo also argues that the United States failed to provide direct notice to Mortgage Electronic Registration Systems, Inc. ("MERS").  Although the United States' standard practice is to provide notice to MERS, it is not obligated to do so.  MERS, in this case, is identified "as separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."  *See* Docket No. 653-1.  Because GreenPoint was identified as the "Lender," the requisite direct notice was provided to GreenPoint.  Even if the United States was obligated to send notice to MERS – which it was not – it provided direct notice to the parties it knew – or reasonably should have known – potentially had an interest in the Real Property.

---

of this Agreement, with Accepted Servicing Practices and applicable law."   Section 4.04 of Article IV further provides that "…The Indenture Trustee shall furnish the Master Servicer, upon written request from a Servicing Officer, with any powers of attorney empowering the Master Servicer or the Servicer to execute and deliver instruments of satisfaction or cancellation, or of partial or full release or discharge, and to foreclose upon or otherwise liquidate Mortgaged Property, and to appeal, prosecute or defend in any court action relating to the HELOCs or the Mortgaged Property, in accordance with the Servicing Agreement and this Agreement, and the Indenture Trustee shall execute and deliver such other documents, as the Master Servicer may request, to enable the Master Servicer to master service and administer the HELOCs and carry out its duties hereunder, in each case in accordance with Accepted Master Servicing Practices (and the Indenture Trustee shall have no liability for use or misuse of any such powers of attorney by the Master Servicer or the Servicer."

Wells Fargo argues that it should have been provided with direct notice of the forfeiture of the Real Property. The United States respectfully disagrees with this argument. The United States engaged in a reasonable amount of due diligence to ascertain a list of potentially interested parties. None of the information obtained reflected a change in ownership of the Mortgage. The Assignment recorded on March 11, 2013 is not associated with the Real Property; the instrument incorrectly identifies the property location as "Township of Templeton." *See* Docket No. 653-2. The United States cannot be expected to have knowledge of an Assignment that is not associated with the Real Property. In fact, Wells Fargo publically acknowledged that there was potentially incorrect information in the Assignment filed in 2013. To illustrate, it filed a Corporate Assignment of Mortgage on March 12, 2015 – several months after the issuance of the Final Order of Forfeiture – and noted "the purpose of this assignment of mortgage is to correct the assignee verbiage on the assignment recorded on March 11, 2013, on Book: 50566, Page 286." *See* Docket No. 653-3.

Moreover, even if the United States had knowledge of the Assignment – which it did not – the Assignment identifies Bank of America as the requestor of the recording of the Assignment, and includes an address of "1800 Tapo Canyon Road, Simi Valley, CA 93063." The Assignment also identifies the assignment of the Mortgage to "Wells Fargo Bank, N.A. as Trustee for the Certificate Holders of Banc of America Funding Corporation, Mortgage Pass-Through Certificates, Series 2005-B." The address provided is "BAC…1800 Tapo Canyon Road, Simi Valley, CA 93063." Given that Bank of America had accepted service in Boston, Massachusetts for both liens related to the Real Property in 2012 when the *Lis Pendens* and Restraining Order were issued by this court, if the United States had notice of the Assignment, it would have sent notice to Bank of America's legal department located in Boston, Massachusetts

– as it had done during the course of this case.  Accordingly, the United States correctly provided direct notice to Bank of America based on the information available to it.

Apart from Wells Fargo's argument that it did not receive adequate due process – which it did – Wells Fargo's motion is devoid of an "extraordinary" basis justifying the Final Order of Forfeiture to be deemed void.  Wells Fargo, at the time of the Assignment in 2013, had actual and/or constructive knowledge that the United States intended to seek the forfeiture of the Real Property.  When the loan was assigned to Wells Fargo, it was assigned the loan subject to the *Lis Pendens* and Restraining Order.  *See* Document Nos. 650-2, Document 21.  Specifically, the Restraining Order stated:

> There is reasonable cause for entry of this order.  The indictment has established probable cause that the Real Properties would be subject to forfeiture to the United States upon one or more of the defendants' convictions.  The Court further concludes that a restraining order is necessary to preserve the availability of the Real Properties for forfeiture in the event of one or more of the defendants' convictions.
>
> *      *      *
>
> It is further ORDERED that the Defendants, their agents, servants, employees, attorneys, family members, all other persons in active concert of participation with them, and those persons, financial institutions, or other entities who have any possession, interest or control over the Real Properties subject to this order, shall not, without prior approval of this Court, upon notice to the United States and an opportunity for the United States to be heard: … (b) cause the Real Properties to be alienate, dissipated, transferred, sold, assigned, leased, pledged, encumbered, or disposed of in any manner…

Docket No. 21 at 3.  The Restraining Order also stated that "anyone holding a mortgage or lien on the Real Properties shall respond promptly to requests by the United States for information on said mortgages or liens' current statuses."  *Id.* at 4.  When Wells Fargo purchased the Mortgage, it did so at its own risk, and when it conducted its own due diligence prior to purchasing the Mortgage, it should have known that the Real Property was subject to forfeiture based on the

public documents available on the Registry of Deeds.  Likewise, Wells Fargo should have also known of the issuance of the Preliminary Order of Forfeiture, which was similarly recorded on the Registry of Deeds.  Wells Fargo had the same opportunity as Bank of America and the general public to file a claim in the ancillary proceeding in this case.  It chose not it, and consequently, a default judgment was entered against it.  Wells Fargo's lack of due diligence, under these circumstances, does not equate to "exceptional circumstances" justifing "extraordinary relief."

  C.  <u>Wells Fargo Lacks Article III Standing and Statutory Standing, and Therefore Would not Be Successful if This Court Allowed it to be Heard on its Untimely Claim.</u>

   1.  <u>Wells Fargo Has Failed To Demonstrate That It Has Article III Standing to challenge the Final Order of Forfeiture Issued by This Court.</u>

Wells Fargo lacks constitutional Article III standing to file a request to "set aside" or "void" the Final Order of Forfeiture.  In a criminal forfeiture ancillary proceeding, the only parties who have standing are claimants who have filed a valid, timely claim.  The claimant bears the burden of demonstrating standing; standing is a threshold consideration and consists of both constitutional and statutory aspects.  *See United States v. Timley*, 507 F.3d 1125, 1129-30 (8th Cir. 2007) (under § 853(n)(2), the claimant must show that he has a "legal interest" in the forfeited property to establish statutory standing); *United States v. Salti*, 579 F.3d 656, 667 n.11 (6th Cir. 2009) (claimant has burden of proof on standing issue); *United States v. Masilotti*, 510 Fed.Appx. 809 (11th Cir. 2013) (court need not address substantive challenges of a third party if the person lacks standing to contest forfeiture); *see also United States v. One-Sixth Share of James J. Bulger In All Present And Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003); *United States v. U.S. Currency in the Amount of*

*$103,387.27*, 863 F.2d 555, 560 n. 10 (7th Cir. 1988).  Standing determines whether the court

has jurisdiction to consider a claimant's claim or an individual's pre-trial motions.  Federal

courts only have limited jurisdiction under Article III of the United States Constitution to resolve

"cases" and "controversies."

To establish Article III standing, "a claimant first must demonstrate a sufficient interest in

the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the

constitutional sense, capable of adjudication in the federal courts." *United States v. Funds In the*

*Amount of $228,*390, No. 94 C 6618, 1996 WL 284943, at *1 (N.D. Ill. May 23, 1996) (quoting

*United States v. $38,000 in United States Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987).  In

criminal forfeiture actions, the United States has a clear stake in acquiring title to the defendant

property.   21 U.S.C. § 853(g); *see United States v. Kirtland*, No. 11-4090-JTM, 2011 WL

362499, at *2 (D. Kan. Aug. 17, 2011) (§ 853(g) authorized the court to enjoin defendant and his

wife from transferring property Government wanted to forfeit as substitute assets; order may be

issued notwithstanding state court judgment approving transfer).   However, individuals or

entities that file a claim in a criminal forfeiture case are considered intervenors, who initially

may or may not have a clear interest in the Real Property. 21 U.S.C. § 853(k); *see also,*

*Sovereign Bank v. Saraceno*, No. 11cv10429-RWZ, 2012 WL 768207 (D. Mass. Mar. 9, 2012)

(granting Government's motion to dismiss interpleader filed by potential claimant immediately

after property was seized and before either civil or criminal forfeiture action was commenced by

stating that claim must be filed in an ancillary proceeding).

Here, Wells Fargo has not established or demonstrated a sufficient interest in the Real

Property.   Wells Fargo is not even a claimant or an intervenor in the ancillary proceeding.

However, even if it was, although a claimant is not required to prove the full merits of a claim at

the pre-trial stage, a claimant must show a "facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement." *United States v. 116 Emerson St.*, 942 F.2d 74, 78 (1st Cir. 1991); *see United States v. $8,440,190.00 in U. S. Currency*, 719 F.3d 49, 64 (1st Cir. 2013) (citing *One-Sixth Share of James J. Bulger In All Present And Future Proceeds of Mass Millions Lottery Ticket No.* M246233, 326 F.3d at 41) (at the initial stages of a forfeiture case, the burden is on the party contesting the forfeiture to establish standing by asserting a "colorable claim on the defendant property"); *see also United States v. Salam, Inc.*, 191 F. Supp. 2d 725, 728-29 (E.D. La. 2001) (claimant, unsecured creditor, failed to establish a facially colorable interest sufficient to establish standing).  A claimant has a facially colorable interest if he or she can show some ownership or possessory interest in the specific property to be forfeited.  The Third-Party Petition filed by Wells Fargo is devoid of any evidence establishing that it has any possessory interest in the Real Property.  Specifically, the verification of the "claim" is signed by a Senior Loan Analyst of Ocwen – not Wells Fargo.  There is also no documentation or information within the Petition to support that Ocwen has any authority or interest in the Real Property or Ocwen's relationship to Wells Fargo.[6]

2.   Wells Fargo Has Failed To Demonstrate That It Has Statutory Standing.

Wells Fargo lacks statutory standing to intervene in this case.  The procedure for any third party asserting a claim to an asset that is subject to forfeiture in a criminal case is set forth

---

[6] Since August 25, 2015, the United States has been under the impression that Ocwen has refused to relinquish the lien on the Real Property – not Wells Fargo.  At all times prior to the filing of Wells Fargo's Motion to Set Aside the FOF, Counsel has stated in both oral and written communications that they represent Ocwen – not Wells Fargo.  Based on the filing of the Third-Party Petition, it is not clear whether Ocwen or Wells Fargo is being represented and which entity has some sort of potential interest in the Real Property.

in detail in 21 U.S.C. § 853(n).[7]  The verified claim requirements in 21 U.S.C. § 853(n)(3) and Rule G(5) are not procedural technicalities.  *See United States v. Sigillito*, 938 F. Supp. 2d 877 (E.D. Mo. 2013) (to prevail in a judicial forfeiture proceeding, the claimant must, *inter alia*, file a claim that comports with the pleading requirements in § 853(n)(3)).   Courts require strict compliance with the statutory scheme set out in § 853(n).  *See e.g.*, *United States v. Klemme*, 894 F. Supp. 2d 1113, 1117 (E.D. Wis. 2012) (the pleading requirements in § 853(n)(3) "require strict compliance."); *United States v. Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 124 (E.D.N.Y. 2006) (the "substantial danger of false claims in forfeiture proceedings" requires strict compliance with § 853(n)); *United States v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014) (affirming dismissal of claim that asserted only a "conclusory legal interest" as not satisfying § 853(n)(3)). To assert a claim to an asset that is included in a preliminary order of forfeiture, a party must do the following:

> within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, *petition the court* for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

21 U.S.C. § 853(n)(2) (emphasis added).  The Preliminary Order of Forfeiture issued in this case instructed that third-party petitioners who assert a claim to the Real Property must do the following:

> within sixty (60) days after the first day of publication on the government forfeiture website or within thirty (30) days after receipt of actual notice, whichever is earlier, file a petition with the United States District Court in Boston, Massachusetts, requesting a hearing to adjudicate the validity of his or her interest in the Real Property; and (b) that the petition shall be signed by the petitioner under the penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the Real Property, the time and circumstances

---

[7] The procedures required under 21 U.S.C. § 853 to assert a claim to an asset in a criminal forfeiture are similar to those for civil forfeitures.  *See* Supplemental Rules For Admiralty or Maritime Claims and Asset Forfeiture Rule G(5)(a)(i).

of the petitioner's acquisition of the right, title, or interest in the Real Property, any additional facts supporting the petitioner's claim, and the relief sought.

Preliminary Order of Forfeiture at p. 4.[8]

Although Wells Fargo recently on November 4, 2015, filed a third-party claim without leave of this Court, Wells Fargo cannot prevail under 21 U.S.C. § 853(n)(2) for three reasons. First, the time to file a claim in this ancillary proceed has long since passed.  Claimants must strictly adhere to the filing requirement to perfect their statutory standing, and because Wells Fargo failed to do so, the claim must not be dismissed.  *United States v. Union Bank for Savings and Investment (Jordan)*, 487 F.3d 8, 24 (1st Cir. 2007) ("the deadline for filing a claim in a forfeiture proceeding exists precisely to force all claims, competing or not, to be made known at the outset of the proceeding;" district court did not abuse discretion in refusing to consider late filing of claim by claimant); *United States v. $102,535 in U.S. Currency*, 499 Fed. Appx. 134, 136 (3d Cir. 2012) (claimants must strictly adhere to the filing requirements to perfect statutory standing; the most important is the timely filing a verified statement of interest because it "allows the court to hear all interested parties and to resolve the dispute without delay, and it also minimizes the danger of false claims"); *Ortiz-Cameron v. Drug Enforcement Admin.*, 139 F.3d 4, 6 (1st Cir. 1998) (court holding that a claimant who has received proper notice and fails to file within the requisite time limits is precluded from bringing a future claim for the property at issue).

Second, it is questionable as to who – Wells Fargo or Ocwen – has right, title, or interest *in the specific property sought to be forfeited* by the United States.  The claim is not

---

[8] If we were to proceed to a hearing, Brown would bear the burden of proving that he is either a bona fide purchaser of the Real Property or has legal right, title, or interest in the Real Property as outlined in 21 U.S.C. § 853(6).  Brown has not taken the first step in establishing in his "petition" that he is able to make such a showing if this matter proceeds to a hearing.

signed by a representative of Wells Fargo and is inadequate under 21 U.S.C. § 853(n)(2). *See United States v. One Men's Rolex Pearl Master Watch*, 357 Fed. Appx. 624, 627 (6th Cir. 2009) (the verification requirement in Supplemental Rule G(5)(a) is strictly enforced to avoid the danger of false claims in forfeiture cases; signature of claimant's attorney is not sufficient); *Mercado v. U.S. Customs Service*, 873 F.2d 641, 644 (2d Cir. 1989) (claim verified "to the best of [the claimant's attorney's] knowledge, information and belief" did not satisfy the verification requirement); *United States v. $29,540.00 in U.S. Currency*, No. 11-12172, 2013 WL 783052, at *5-6 (D. Mass. Feb 28, 2013) (court holding that Claimant lacked standing to contest forfeiture because the claim was not signed by Claimant under penalty of perjury and therefore did not satisfy the requirements of Supplemental Rule G(5)(a)(i)(C)).

Third, the "claim" does not provide any statements or evidence regarding the nature or extent of any alleged interest, the time and circumstances of the acquisition of right, title, or interest in the Real Property, or other factual circumstances. *United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003) ("party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture"); *United States v. U.S. Currency, $81,000*, 189 F.3d 28, 35 (1st Cir. 1999) ("courts have held that an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest forfeiture," but bare assertions of ownership is insufficient); *United States v. $100,348 in U.S. Currency*, 354 F.3d 1110, 1118-19 (9th Cir. 2004) (because "the danger of false claims in these proceedings is substantial," courts require more than "conclusory or hearsay allegations of some interest in the forfeited property"); *$29,540.00 in U.S. Currency*, 2013 WL 783052, at *5 (D. Mass. Feb 28, 2013) (assertion that the

defendant property "was seized from my possession" failed to satisfy the requirements of

Supplemental Rule G(5)(a); claimant must explain how he or she came into possession of the

property and provide evidence that the possession is lawful); *29 Robinson Blvd., Medway, Me.*,

2012 WL 3947628, at \*5 (failure to include asserted interest in property in a claim is not

considered to be a minor procedural failure).  Accordingly, even if this Court allowed Wells

Fargo to file a claim, under applicable case law and statutory authority, Wells Fargo's claim

would be dismissed for untimeliness.

## CONCLUSION

Accordingly, the United States respectfully requests that this court (a) deny Wells

Fargo's Motion to Set Aside the FOF; and (b) strike the Third Party Claim.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:    */s/ Doreen M. Rachal*_____
       DOREEN M. RACHAL
       Assistant United States Attorney
       BBO #667837
       U.S. Attorney's Office
       1 Courthouse Way, Suite 9200
       Boston, MA 02210
       (617) 748-3100
Dated: November 9, 2015    doreen.rachal@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum in Opposition to Wells Fargo Bank,
N.A.'s Motion to Set Aside the January 30, 2015, Final Order of Forfeiture and Motion to Strike
Claim, was filed through the Electronic Court Filing system and will be sent electronically to the
registered participants as identified on the Notice of Electronic Filing.

*/s/ Doreen M. Rachal*_____
DOREEN M. RACHAL
Dated: November 9, 2015    Assistant U.S. Attorney