UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 12-10226-DJC |
| | ) | |
| 1. JOHN KOSTA | ) | |
|    a/k/a "Costa Mihalakakis," | ) | |
|        Defendant. | ) | |

## STATUS REPORT

The United States of America, by its attorney, Carmen M. Ortiz, United States Attorney for the District of Massachusetts, respectfully submits the following status report in response to this Court's request during the Motion Hearing on November 3, 2015 ("Motion Hearing"):

1.      On August 6, 2012, this Court issued *Lis Pendens* against various properties, including the property located at 45 Riley Switch Road, Phillipston, Massachusetts, including all buildings, improvements, and appurtenances thereon, more particularly described in a deed recorded at Book 35664, Pages 42-43, at the Worcester District Registry of Deeds ("45 Riley Switch Road Property").  The *Lis Pendens* provided notice that the Real Property, among other properties, was subject to forfeiture to the United States upon the conviction of one or more of the defendants in this case.

2.      On August 8, 2012, the United States recorded the *Lis Pendens* for the Real Property with the Worcester District Registry of Deeds.

3.      There are two outstanding mortgages on the Real Property - a mortgage loan (Loan Number: 7131451580) (the "Mortgage Loan") and a home equity loan (Loan Number: 0202054011) (the "Equity Loan") (collectively, the "Loans").

4.      On September 27, 2012, a federal grand jury sitting in the District of Massachusetts returned a six-count Superseding Indictment charging defendant John Kosta a/k/a

"Costa Mihalakakis" (the "Defendant"), and others, with various criminal charges.  The Defendant is the owner of the Real Property.

5.      The Superseding Indictment contained a drug forfeiture allegation, pursuant to 21 U.S.C. § 853, which provided notice that the United States sought the forfeiture, upon conviction of the Defendant of the offense alleged in Counts One, Two, Four, Five, and Six of the Superseding Indictment, (jointly and severally as to Count One) of any and all property constituting, or derived from, any proceeds the Defendant obtained, directly or indirectly, as a result of such offenses, and/or any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses.  The drug forfeiture allegation further listed numerous specific assets for forfeiture.  *See* Docket No. 198.

6.      The Superseding Indictment also contained a money laundering forfeiture allegation, pursuant to 18 U.S.C. § 982(a)(1), which provided notice that the United States sought the forfeiture, upon conviction of the Defendant of any offense alleged in Count Three of the Superseding Indictment, jointly and severally, of any property real or personal, involved in the offense, and any property traceable to such property.  The money laundering forfeiture allegation further listed numerous specific assets for forfeiture.  *Id*. at 15-17.

7.      On March 13, 2014, at a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the Defendant pled guilty to Counts One through Four of the Superseding Indictment pursuant to a written plea agreement that he signed on March 13, 2014.  *See* Docket No. 511.  In Section 10 of the plea agreement, the Defendant agreed to the forfeiture of various assets, including the Real Property.

8.      On July 21, 2014, a sentencing hearing was held whereby this Court sentenced the Defendant to 120 months incarceration, to be followed by a term of 3 years supervised release, and ordered the Defendant to pay a special assessment of $400.  In addition, this Court ordered

the Defendant to forfeit the Real Property, among others, pursuant to the terms of the

Preliminary Order of Forfeiture.  *See* Docket No. 545.

9.      On July 22, 2014, this Court issued a Preliminary Order of Forfeiture against the

Real Property, among others, pursuant to 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853, and Rule

32.2(b)(2) of the Federal Rules of Criminal Procedure.  *See* Docket No. 545-1.

10.     Notice of the Preliminary Order of Forfeiture was sent to interested parties

identified by the United States, and the Preliminary Order of Forfeiture was published on the

government website www.forfeiture.gov for thirty (30) consecutive calendar days, beginning on

August 1, 2014 and ending on August 30, 2014.  *See* Docket Nos. 565 – 568, 586, and 596.  The

deadline for any interested parties to file a claim based on notice through publication was

October 29, 2014.  Additionally, the United States served a copy of the Preliminary Order of

Forfeiture to the Worcester District Registry of Deed, which was subsequently recorded on

August 15, 2014 (Book: 52682, Page: 330).  *See* Docket No. 603.

11.     On October 6, 2014, Bank of America, N.A. ("BOA"), as servicer on behalf of

Wilmington Trust, N.A., as Trustee for the GreenPoint Mortgage Funding Trust 2007-HE1, filed

a Third Party Petition of Interest in the Real Property, identifying an outstanding mortgage lien

totaling $19,920.03.[1]  *See* Docket No. 597.  On December 19, 2014, the United States entered

into an Expedited Settlement Agreement with BOA.

12.     No other claims were filed relating to the Real Property.

13.     On January 30, 2015, this Court issued a Final Order of Forfeiture against various

---

[1]BOA provided the United States documentation substantiating its interest in the Real
Property, including the Appendix/Exhibit (Docket No. 662), which the United States filed with
this Court on November 10, 2015.  The United States did not obtain this document from the
Internet.

properties, include the Real Property, pursuant to 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853, and Rule 32.2 of the Federal Rules of Criminal Procedure.

14.     Upon receiving the Final Order of Forfeiture, the United States Marshals Service immediately attempted to dispose of the Real Property.  The property was immediately placed on the market, and a potential buyer presented an offer to purchase the property.

15.     On March 12, 2015, a Corporate Assignment of Mortgage was filed with the Worcester County Registry of Deeds (Book: 50566, Page: 137), seeking to correct a prior assignment recorded on March 11, 2013 (Book: 50566, Page: 286).

16.     In late August 2015, the United States encountered difficulties with providing clear title to the potential buyer because Ocwen Loan Serving LLC ("Ocwen") refused to release the Mortgage Loan.

17.     On August 27, 2015, the United States sent a letter to Ocwen, attaching all relevant forfeiture documents and notices.  Thereafter, the United States attempted to work collaboratively with Ocwen to resolve the dispute without judicial intervention, including working with Ocwen to obtain its own appraisal of the Real Property, recommending an interlocutory sale of the Real Property and suggesting that the proceeds of the sale - minus all outstanding tax liabilities, expenses incurred by the United States, and the amount due and owing to BOA pursuant to the Expedited Agreement - be placed in an account until the resolution of the dispute, and offering the possibility of settlement discussions.

18.     On October 28, 2015, the United States filed an Emergency Motion for the Issuance of Quiet Title to the United States and an Emergency Motion For Second Amended Final Order of Forfeiture.  *See* Docket Nos. 651, 652.

19.     On October 30, 2015, Wells Fargo Bank N.A., as Trustee of Banc of America Funding 2005-B Trust ("Wells Fargo") filed an Opposition to United States' Emergency Motion

For Second Amended Final Order of Forfeiture and an Opposition to United States' Emergency

Motion for Issuance of Quiet Title to the United States.  *See* Docket No. 653, 654.

20.     On November 2, 2015, Wells Fargo filed a Motion to Set Aside the January 30,

2015 Final Order of Forfeiture.  *See* Docket No. 657.  On November 4, 2015, Wells Fargo,

without leave of this Court, filed a Third-Party Claim.  *See*  Docket No. 659.  On November 9,

2015, the United States filed a Memorandum in Opposition to Wells Fargo's Motion to Set Aside

the January 30, 2015 Final Order of Forfeiture and Motion to Strike Claim.  *See* Docket No. 661.

On November 12, 2015, Wells Fargo filed a Motion for Leave to file a Reply Brief to the United

States' Opposition to Wells Fargo's Motion to Set Aside the January 30, 2015 Final Order of

Forfeiture and Motion to Strike Claim.  *See* Docket No. 665.

21.     On November 3, 2015, this Court scheduled a Motion Hearing to address the

motions filed by the United States (*i.e.*, Docket Nos. 650, 651).  This Court took the matter under

advisement and provided the parties with two weeks to resolve the dispute.  Immediately

following the Motion Hearing, the United States presented an offer of settlement to Wells Fargo.

The United States requested that Wells Fargo provide a status update on the proposed offer by

November 9, 2015.  The United States also recommended that Wells Fargo consider consenting

to an interlocutory sale of the Real Property in order to preserve the equity remaining in the Real

Property.  The United States also informed Wells Fargo that the buyer wanted to close on the

Real Property as soon as possible without any further delay and requested that Wells Fargo

notify the United States by November 6, 2015 regarding its proposal.  The United States also

explained that if Wells Fargo did not agree to an interlocutory sale by November 6, 2015, that

the United States would file a motion with this Court requesting approval for an interlocutory

sale.

22.     On November 5, 2015, Wells Fargo agreed to allow the United States to sell the

Real Property for $150,000, with the understanding that all funds received from the sale would be placed into an account until the resolution of this dispute.  Immediately thereafter, the United States contacted the United States Marshals Service regarding the agreement with Wells Fargo. Shortly thereafter, the United States received a copy of a sales contract between the buyer and the United States, noting a negotiated sales price of $141,000.  The buyer also requested an additional discount of $10,000, given the substantial delay in closing.  To date, the United States has not agreed to a price decrease.  This information was promptly communicated to Wells Fargo, and the United States requested Wells Fargo's approval to move forward with a potential sales price of $131,000.

23.     Wells Fargo inquired on November 6, 2015, whether the proposed settlement amount offered by the United States would be modified given the change in purchase price.  The United States responded several times on November 6, 2015, confirming that the settlement amount would not change.

24.     Because Wells Fargo did not consent to the reduced purchase price and time was of the essence, on November 9, 2015, the United States filed an Emergency Motion for Interlocutory Sale of the Real Property.  *See* Docket No. 660.  Wells Fargo filed its opposition to the motion on November 10, 2015.  *See* Docket No. 663.  In response, the United States filed a Motion for Leave to File a Reply Brief on November 12, 2015.[2]  *See* Docket No. 664.  Wells Fargo filed a Motion for Leave to File a Surreply on November 12, 2015.  *See* Docket No. 666.

---

[2] As of November 10, 2015, when undersigned Counsel for the United States left the country and finalized the reply brief for filing with this Court, the United States did not receive any response from Wells Fargo regarding its consent to the potential new purchase price of $131,000 for the Real Property.  Counsel for Wells Fargo was aware that undersigned Counsel would be unavailable from November 10, 2015 to November 17, 2015. In any event, the United States requested a response by November 6, 2015 – and as of November 6, 2015, Wells Fargo had not responded.

25.     On November 19, 2015, the United States received notification that the buyer wants to move forward as soon as possible with the purchase of the Real Property.  After speaking with various title attorneys and the United States Marshals Service, the proposal that all proceeds from the sale be held in escrow pending the resolution of this matter poses other impediments to proceeding with the closing.  First, to bestow clear title to the buyer, both Loans must be released at the time of closing.  Although Wells Fargo has agreed to issue a consent to release its lien, it is questionable whether BOA will now release its lien in light of the current litigation (*i.e.,* withholding at closing the amount owed to BOA pursuant to the Expedited Settlement Agreement).[3]  Second, in order to proceed with the closing, the United States has been advised that an Order from this Court would be required, ordering the United States Marshals Service not to pay BOA pursuant to the Expedited Settlement Agreement, which is incorporated in the Final Order of Forfeiture.  *See* Docket No. 619, at 7.  Third, based on information provided by the Phillipston Tax Assessor, the United States has not been able to confirm whether the 2015 taxes on the Real Property have been paid, given that the United States took possession of the Real Property in January 2015.  Any outstanding water and sewage amounts, in addition to any taxes that are outstanding, must also be paid in order to complete the closing process.  Fourth, any other title related fees (*i.e.*, title attorney expenses, etc.) must be paid at closing.  Fifth, funds from a real estate sale cannot remain indefinitely in escrow – as Wells Fargo contemplates.  Last, the United States has incurred expenses associated with the Real Property, including but not limited to mold remediation, appraisal fees, any 2015 taxes or expenses paid by the United States, and maintenance costs.  These fees would likely appear on

---

[3] The United States has proactively contacted BOA's counsel and is attempting to work with BOA on this issue.

the HUD-1 Statement and will be automatically deducted from any proceeds from the sale of the Real Property.  Accordingly, by placing an additional restriction that "all monies from the sale will be placed in escrow pending resolution of this litigation…," Wells Fargo's recommended solution would not allow the United States to properly dispose of the Real Property.  *See* Docket No. 665, at 1.

26.     As of the filing date of this Status Report, Wells Fargo has not responded to the proposed offer of settlement.  Based on the lack of response by Wells Fargo to the proposed offer of settlement, the United States respectfully requests that this Court issue a decision on the various motions that have been filed.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:     */s/ Doreen M. Rachal*
LEAH B. FOLEY
DOREEN M. RACHAL, BBO No. 667837
doreen.rachal@usdoj.gov
Assistant United States Attorneys
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Dated: November 19, 2015          (617) 748-3100

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Status Report was filed through the Electronic Case Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

 /s/ Doreen M. Rachal
DOREEN M. RACHAL
Dated: November 19, 2015                    Assistant United States Attorney